# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

---

## UNITED STATES

**v.**

## Technical Sergeant JAMES P. SAUK
### United States Air Force

## ACM 38398
### (recon)

____ **M.J.** ____

## 27 March 2015

Sentence adjudged 23 March 2013 by GCM convened at Joint Base Andrews, Maryland. Military Judge: Mark L. Allred.

Approved Sentence: Bad-conduct discharge, confinement for 5 years, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Michael A. Schrama (argued) and Colonel Patrick J. Wells.

Appellate Counsel for the United States: Gerald R. Bruce, Esquire (argued); Colonel Katherine E. Oler; Lieutenant Colonel C. Taylor Smith; Lieutenant Colonel Nurit Anderson; Major Daniel J. Breen; Captain Collin F. Delaney; Captain Richard J. Schrider.

### EN BANC

MITCHELL[1], HECKER, WEBER, TELLER, and CONTOVEROS
Appellate Military Judges

### UPON RECONSIDERATION

### PUBLISHED OPINION OF THE COURT

---

[1] In a memorandum dated 2 February 2015, Lieutenant General Christopher F. Burne, The Judge Advocate General, designated Senior Judge Martin T. Mitchell as the Chief Appellate Military Judge in cases where Chief Judge Mark L. Allred served as the military judge or recused himself under the governing standards of judicial conduct. In this case, Chief Judge Allred, while serving as the trial judge, presided over the appellant's court-martial. Therefore, Judge Mitchell served as the Chief Judge for this case.

PER CURIAM:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of involuntary manslaughter, aggravated assault, assault, and negligent homicide, in violation of Articles 119, 128, and 134, UCMJ, 10 U.S.C. §§ 919, 928, 934. The court sentenced the appellant to a bad-conduct discharge, confinement for 5 years, and reduction to E-1. The convening authority approved the sentence as adjudged.

On appeal, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the appellant contends: (1) the evidence is factually and legally insufficient to sustain his convictions; (2) his trial defense counsel were ineffective; (3) unlawful command influence made it impossible for him to receive a fair trial and clemency consideration; (4) he is entitled to relief pursuant to Article 13, UCMJ, 10 U.S.C. § 813; and (5) the sentence is inappropriately severe. He also contends the military judge erred by failing to merge the specifications as either being multiplicious or as an unreasonable multiplication of charges. Before turning to the assignments of error, we address the Government's failure to obey an order this court issued to produce post-trial discovery.

*Background*

The charges in this case stemmed from the death of the appellant's two-month-old son. The infant had been rushed to a local emergency room by paramedics after his parents called 911 early on the morning of 10 January 2011. When the infant arrived at the emergency room, he was not breathing, had no pulse, and was not responsive. A pediatrician was eventually able to restore the infant's heartbeat, but she observed indications the child had suffered what she believed to be non-accidental head trauma (lack of pupil response to light, eye hemorrhages, low body temperature, and seizures). The infant was transferred to The Johns Hopkins Hospital where he could be treated at a pediatric intensive care unit. His brain began to swell, causing irreversible brain damage. On 11 January 2011, he was removed from life support.

The appellant was charged with six offenses involving the death of his son: unpremeditated murder, involuntary manslaughter by culpable negligence, aggravated assault by force likely to cause death or grievous bodily harm, negligent homicide, assault, and child endangerment. He was acquitted of the murder charge and child endangerment charges and convicted of the remaining offenses.

On 20 January 2015, a panel of this court issued its decision in this case, dismissing the aggravated assault, negligent homicide, and assault specifications, as explained below. We subsequently granted the Government's request for en banc reconsideration.

Two days after we issued our initial decision in this case, the appellant moved for leave to file a motion to compel production of post-trial discovery. The appellant noted that the Inspector General for the Department of Defense had recently issued a report on the evaluation of military criminal investigative organizations' child death investigations during a two-year time period. The report found that six cases studied had "significant deficiencies," with two of them originating from the Air Force Office of Special Investigations (AFOSI), the organization that was involved in the appellant's case.[2] The appellant moved this court to order the production of any and all documents related to the investigation concerning any deficiencies committed by investigative organizations that investigated the appellant's case. The Government opposed the motion.

After considering both parties' submissions and the direction outlined in *United States v. Campbell*, 57 M.J. 134 (C.A.A.F. 2002), this court granted the appellant's motion in part. The court ordered the Government to disclose by 17 February 2015 whether the appellant was referenced in either investigation returned to AFOSI. The Government promptly moved for reconsideration and asked this court to consider that motion en banc. We denied their request and issued a revised order directing the Government to comply by 20 February 2015.

The Government did not comply with that order. Instead, on the date by which the court had ordered it to provide post-trial discovery, the Government filed a "motion for leave to file response." The Government's motion expressed its continued disagreement with this court's post-trial discovery order and indicated the Government was "considering whether to accept this Court's decision or to pursue it further by way of certification to our superior Court." The Government did not indicate it had requested any relief from the United States Court of Appeals for the Armed Forces (C.A.A.F.) or this court. Further, the Government did not request a delay of the compliance deadline or that this court stay enforcement of its post-trial discovery order until a certification decision could be made.

The appellant timely filed a response to the Government's pleading, asking this court to set aside the findings and sentence "based on the government's intentional refusal to comply with a judicial order without seeking relief from the order with this Court." We ordered the Government to show cause why the appellant's request should not be granted.

---

[2] According to the report, a "significant deficiency indicates a breakdown in practices, programs, or policies having actual notable adverse impact on, or a likelihood of materially affecting the investigation or adversely affecting, or having a high probability of adversely affecting, the outcome of an investigation," including key evidence not collected, and scene examinations not sufficiently conducted.

In response to a show cause order from this court and during oral argument, the Government asserted the United States is allowed 60 days from the issuance of our revised order to seek certification to C.A.A.F. The Government generally asserted that The Judge Advocate General could certify this matter for our superior court's review under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2). While the Government's position centered on the post-trial discovery order issued in this case, the Government indicated that *all* orders from this court are theoretically subject to the same 60-day period during which a party need not comply with this court's orders if it believes certification to review the order is appropriate. The Government explained it did not seek an enlargement to comply or a stay of the order's execution because this court's orders, like its decisions, are not self-executing and thus are not final until this period has run. We disagree.

A service court order is "a command or directive issued by the Court" as part of its duties under Article 66, UCMJ, 10 U.S.C. § 866. A.F. CT. CRIM. APP. R. PRAC. AND PROC. 18.1. Unlike its decisions, interlocutory orders issued by this court as part of its review under Article 66, UCMJ, are self-executing and do not require the issuance of a mandate to be effective. The effective date of such an order is the date it was issued. *Cf.* C.A.A.F. R. PRAC. AND PROC. 43A(b). It is true that final decisions or opinions of the court are not self-executing because the parties enjoy a statutory right to appeal such decisions or opinions. *United States v. Miller*, 47 M.J. 352 (C.A.A.F. 1997). However, no case has held that this applies with respect to orders of this court, particularly an interlocutory order dealing with discovery.

Counsel have an obligation to "comply promptly with all orders and directives of the court." A.F. STANDARDS FOR CRIM. JUSTICE, Standard 3-5.2(c) (6 June 2013). This court recently made this point clear. *See United States v. Bowser*, 73 M.J. 889, 899 (A.F. Ct. Crim. App. 2014), *aff'd*, No. 15-0289/AF (C.A.A.F. 25 March 2015) ("Short of some completely unusual circumstances not present here, the Government simply does not have the authority to choose which orders of a military judge it will follow and which ones it will not, at least not without facing the threat of remedial action or even punishment."). If the Government did not understand the message of *Bowser* before, we make the point plain now: counsel appearing before this court have a duty to obey all orders of this court, except in the extraordinary situation where the court issues an order plainly calling for counsel to engage in unlawful or unethical conduct. It matters not whether the Government disagrees with this court's order or that a "professional disagreement" (as the Government terms it) arises. *See United States v. Roach*, 66 M.J. 410, 419 (C.A.A.F. 2008) (emphasizing that Courts of Criminal Appeals may set and enforce deadlines and have broad powers to issue orders to counsel to ensure the timely progress of cases reviewed under Article 66, UCMJ).

Of course, counsel disagreeing with an order of this court may seek any available review of such an order from our superior court. We express skepticism with the

Government's position that our superior court has jurisdiction to review an interlocutory order through certification by The Judge Advocate General, particularly when the case remains with this court pursuant to a pending motion for reconsideration. *See* C.A.A.F. R. PRAC. AND PROC. 19(g) ("If an appeal is filed in this Court before the expiration of time to file a motion for reconsideration in a Court of Criminal Appeals, this Court, upon the prompt filing of a motion to dismiss by a party stating that a timely motion for reconsideration is pending in a Court of Criminal Appeals, may dismiss the appeal without prejudice and remand the case to the Court of Criminal Appeals for resolution of the motion for reconsideration. Following a decision by the Court of Criminal Appeals on the motion for reconsideration, review may be sought in this Court under Article 67, UCMJ."); *see also United States v. Curtin*, 44 M.J. 439, 440 (C.A.A.F. 1996) (holding that the definition of a "case" for purposes of certification under Article 67(a)(2) "includes a 'final action' by an intermediate appellate court on a petition for extraordinary relief" (quoting *United States v. Redding*, 11 M.J. 100, 104 (C.M.A. 1981)).

However, it is not for this court to decide our superior court's jurisdiction in this situation. If the Government wishes to seek review of this court's orders, it may do so. In the meantime, however, all parties must comply with this court's orders. No "grace period" is permitted during which a party may simply decide not to comply with an order solely because it is considering whether to seek review of the order. We roundly reject the Government's view that compliance with orders is not required until the time has elapsed for the party to seek appellate review of the order. The effective functioning of this court would cease if each court order automatically includes an extension of up to 60 days to its effective date to allow for consideration of appellate review options. Accordingly, if a party is considering appellate review of an order issued by this court, or if the party has already filed for further appellate review of the order, that party must ask this court or our superior court to stay enforcement of the order while that process is ongoing. Without such a request being granted and short of some completely unusual circumstances not present here, the Government simply does not have the authority to choose which orders of a court it will follow and which ones it will not, at least not without facing the threat of remedial action or even punishment.

Our order for oral argument directed the parties to address whether this court should dismiss the charges and specifications in this case due to the Government's conduct, or alternatively whether it should hold appellate government counsel in contempt of court. We believe that both options are available to us under our broad authority to do justice under Article 66(c), UCMJ, and our contempt authority under Article 48, UCMJ, 10 U.S.C. § 848. However, on the eve of oral argument, the Government belatedly provided declarations responsive to this court's post-trial

discovery order.[3]  The Government's belated compliance does not excuse its earlier actions, particularly when it continued to maintain the position at oral argument that it did not need to comply with this court's order or even seek a stay of the enforcement of the order to pursue its options for further review.  The Government had no legal basis to disobey this court's order, particularly in light of the recent *Bowser* decision.  *Bowser*, 73 M.J. 889.  Nonetheless, we have elected not to dismiss the charges and specifications or hold government counsel in contempt.

*Multiple Offenses*

During our initial review of this case, we affirmed the finding of guilt for the involuntary manslaughter by culpable negligence but dismissed the aggravated assault, assault, and negligent homicide offenses.[4]  We noted the Government is authorized to charge multiple offenses in the alternative based on exigencies of proof but if a panel returns guilty verdicts as to those alternative charges, "'it [is] incumbent' either to consolidate or dismiss a specification."  *United States v. Elespuru*, 73 M.J. 326, 329 (C.A.A.F. 2014) (quoting *United States v. Mayberry*, 72 M.J. 467, 467–68 (C.A.A.F. 2013)) (alteration in original).  The Government timely moved this court to reconsider our opinion en banc, arguing the *Elespuru* holding was limited to the facts of that case and, unlike in that case, the Government had not agreed that these specifications were charged in the alternative.

Although trial counsel did not state outright that these offenses were charged in the alternative, the actions of the Government before and after trial make clear that was the case.  Prior to trial, the investigating officer noted the charges covered a variety of legal theories for culpability and would not be improper if viewed as charged in the alternative.  Similarly, during findings argument, trial counsel referred to the six charges as "various levels of culpability as to [the child's] death."  After findings were announced, the military judge asked if the parties had an agreement on the appropriate way to handle the case based on the manner it was charged and the panel's findings.  The Government then agreed the charges should be treated as one offense and merged for purposes of sentencing.  In light of this and the evidence adduced at trial, we reject the

---

[3]  According to declarations submitted by the Government, the appellant was not referenced in either investigation returned to AFOSI.  These declarations do not indicate that the Office of the Inspector General for the Department of Defense or the AFOSI had raised any objection to the appellant being provided this information.

[4]  The appellant was convicted of four specifications, each alleging that a single (non-divers) action occurred between 13 November 2010 (the day the child was born) and 11 January 2011 (the day the child died).  The involuntary manslaughter charge alleged the appellant caused the child's death through culpable negligence by striking him on the head or by exerting some other excessive force against his head.  The negligent homicide charge alleged he caused the death by negligently striking the child or handling him in a negligent manner.  The aggravated assault charge alleged the appellant struck the child or otherwise caused him to come into contact with a force likely to produce death or grievous bodily harm (brain injury).  The assault specification alleged he unlawfully struck or otherwise used excessive force against the child.

Government's argument on reconsideration and again set aside the aggravated assault, assault, and negligent homicide offenses.

Although we set aside these specifications, the appellant remains convicted of involuntary manslaughter by culpable negligence. Because the military judge instructed the panel that the specifications were multiplicious for sentencing and calculated the maximum confinement as 15 years (based on involuntary manslaughter of a child), we find the approved and adjudged sentence would have been the same as the original sentence, even if these specifications were dismissed at the trial level.[5] *See United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006) (stating that an appellate court can reassess the sentence if it "can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity" as a "sentence of that severity or less will be free of the prejudicial effects of error"); *see also United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013).

*Factual and Legal Sufficiency*

The appellant argues that the evidence is legally and factually insufficient to support his conviction for involuntary manslaughter. We disagree.

Under Article 66(c), we review issues of legal and factual sufficiency de novo. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325.

The appellant was convicted of involuntary manslaughter which, as charged here, required the prosecution to prove beyond a reasonable doubt that (1) the appellant's son was dead; (2) his death resulted from the act of the accused in striking him on the head,

---

[5] Although not raised as an issue by the appellant, we note the staff judge advocate recommendation (SJAR) erroneously advised the convening authority that the maximum sentence included 25 years' confinement. The defense asked that the findings be set aside or, in the alternative, that his sentence be reduced by 10 months. He did not object to the SJAR or mention the incorrect maximum in the clemency submission. Failure to raise this issue in a timely manner waives it unless it is plain error. Rule for Courts-Martial 1106(f); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). Although the staff judge advocate was clearly mistaken when he misinformed the convening authority about the maximum confinement time, the appellant has not made a colorable showing of possible prejudice. *See United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). Under the circumstances of this case, we do not believe correct advice on the maximum punishment would have foreseeably led the convening authority to take any action other than the one he did, i.e., approving the sentence as adjudged.

or by asserting some other excessive force against his head between on or about 13 November 2010 and on or about 11 January 2011; (3) this act amounted to culpable negligence; (4) the killing of the child by the appellant was unlawful; and (5) the child was under the age of 16 years. "Culpable negligence" is defined as a degree of carelessness, greater than simple negligence, and is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission. *Manual for Courts-Martial, United States*, Part IV, ¶ 44.c.(2)(a)(i) (2008 ed.). The basis for this charge "may be a negligent act or omission which, when viewed in the light of human experience, might foreseeably result in the death of another, even though death would not necessarily be a natural and probable consequence of the act or omission." *Id.*

It was undisputed that the appellant was alone with his son when the child became critically ill and stopped breathing. The appellant argues, however, that the evidence is insufficient to prove he was the person who caused the injuries that resulted in his son's death. He notes that the Government and defense experts disagreed about when the fatal injury was inflicted and that the evidence therefore cannot prove he was the perpetrator. The appellant further notes that his wife had anger management issues, had acted out violently towards him, and was under stress due to post-partum depression. He also points to the testimony of his expert who indicated the appellant's routine handling of his son that night could have triggered a re-bleed from a preexisting hemorrhage caused by someone else.

We have reviewed all the evidence, including the extensive expert testimony, and taken into account the arguments raised by the appellant. The medical evidence convincingly revealed that the infant suffered non-accidental injuries, including significant damage to his brain from blunt force trauma. Despite significant efforts by the defense to portray the appellant's wife as the cause of the infant's death, the members were convinced beyond a reasonable doubt that the appellant caused the infant's death through his own culpable negligence. Viewing the evidence in the light most favorable to the Government, we are convinced a rational factfinder could find beyond a reasonable doubt the appellant was guilty of this offense. Upon our own review of the evidence in the record of trial, we are personally convinced of the appellant's guilt beyond a reasonable doubt.

*Ineffective Assistance of Counsel*

The appellant contends his three trial defense counsel were ineffective because they failed to properly handle voir dire and member challenges and failed to present a good military character defense. We disagree.

This court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims,

we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Our superior court has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

The appellant bears the burden of establishing his trial defense counsel were ineffective. *See United States v. McConnell*, 55 M.J. 479, 484 (C.A.A.F. 2001). The law presumes counsel actions to be appropriate, and we will not second-guess a trial defense counsel's reasonable strategic or tactical decisions. *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993); *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009). To prevail on a claim of ineffective assistance of counsel, the appellant "must rebut this presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987) (citation omitted). We need not decide if trial defense counsel was deficient during post-trial representation if the second prong of *Strickland* regarding prejudice is not met. *See United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005).

1. Voir dire and member challenges

The appellant argues his trial defense counsel were ineffective for not specifically asking the potential panel members about a December 2012 Air Force Times article that referred to his case and for leaving certain panel members on the case.

In response to a question from the military judge, all prospective panel members said they had no knowledge of the facts or events of the case. The appellant's senior defense counsel conducted a limited follow-up by asking if any of them thought they had heard about the case or "read about it in the Air Force Times or anywhere else." All the potential members answered negatively. In their court-ordered declarations, two of the appellant's defense counsel stated the defense deliberately made the strategic decision to not specifically draw the members' attention to the actual article. The defense team believed the members would answer truthfully if they knew about the case from that article and the defense did not want to refresh their memory if they could not recall reading it. The counsel's declarations provide sound and reasonable explanations for the approach taken during voir dire which we will not second-guess. *Morgan*, 37 M.J. at 410; *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) ("Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so.")

In his declaration, the appellant also indicates that several panel members had identified professional and personal experience in "investigative, abuse, and medical issues" which could have given them a bias which rendered them incapable of impartially weighing the evidence in the case. We disagree that his counsel were ineffective for not challenging these members for cause or exercising the defense's sole peremptory challenge on one of them. First, trial defense counsel did successfully challenge one prospective member based on his friend's previous exposure to child abuse. The defense also concurred in two challenges involving prospective members' experience in law enforcement and another member's indication of bias. As to the panel members who remained, these members did not possess an actual or implied bias that would require their excusal from the case. *See* Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) ("A member shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."); *United States v. Napoleon*, 46 M.J. 279, 283 (C.A.A.F. 1997) (stating that actual bias exists where any bias will not yield to the evidence presented and the judge's instructions); *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (stating that even if a panel member disclaims bias, implied bias exists when most people in the same position would be prejudiced). All the members affirmed their impartiality and ability to decide the case solely on the evidence before them. The defense thoroughly explored any issues of possible bias in individual voir dire, even questioning one member who had previously served in security forces. As there was no evidence of actual or implied bias on the part of these panel members, the trial defense counsel's decision to not challenge these panel members falls within the bounds of reasonable performance. Additionally, all three trial defense counsel stated that the appellant was actively involved in the defense team's discussion about the results of the voir dire process and who they should challenge. By failing to challenge these members at trial, the appellant waived this issue. *See* R.C.M. 912(f)(2)(B) and (f)(4) (failing to raise a challenge to a panel member in a timely manner waives the issue); *United States v. Stone*, 26 M.J. 401, 403 (C.M.A. 1988).

Lastly, the appellant contends MSgt K should have been challenged as a panel member during the court-martial because the panel member had a professional relationship with the appellant. While the panel was reviewing the appellant's performance reports during the sentencing phase, MSgt K sent a note to the military judge indicating he had just realized he was stationed at Scott Air Force Base at the same time as the appellant and the two worked in the same building for a short period of time. The parties agreed MSgt K did not need to be questioned about this note. In his declaration, the appellant says the note triggered his own memory and he recalled having weekly contact with MSgt K over a two-year period. He contends MSgt K could have had a preconceived bias against the appellant based on this work history. In his declaration, one of the appellant's trial defense counsel states he had no concerns about MSgt K being biased against the appellant because MSgt K did not recall knowing the

appellant and the appellant had not had any disciplinary or other problems at that base. Trial defense counsel's affidavit also notes the defense considered MSgt K to be a favorable member based on his answers to questions in voir dire. These are sound and reasonable explanations for the decision which we will not second-guess. *See Morgan*, 37 M.J. at 410; *Datavs*, 71 M.J. at 424. Likewise, we see nothing about MSgt K's previous contact with the appellant that causes any concern that MSgt K might be biased against him in actuality or in appearance.

2. Good character defense

The appellant's declaration simply states his counsel were ineffective for not pursuing a good military character defense. He has not provided any specificity as to what any such witnesses would have said if they had been called to testify at trial. In that posture, the appellant has not demonstrated prejudice under the second prong of *Strickland*. *See United States v. Perez*, 64 M.J. 239, 244 (C.A.A.F. 2006).

Additionally, the declarations from his trial defense counsel explained the process they undertook in an effort to procure the evidence necessary to raise this defense. After considerable effort, the defense team had not found any witnesses willing to give this type of testimony in a persuasive manner. The declarations further discuss the defense's concern about what the appellant's wife may say in response to this defense, especially because she refused to meet with the trial defense counsel prior to her testimony in court. The decision to forgo putting on this evidence on the merits had a reasonable, tactical basis. While the appellant may disagree with the decision in retrospect, it did not fall below *Strickland*'s objective standard of reasonableness. *See United States v. McConnell*, 55 M.J. 479, 485 (C.A.A.F. 2001).

*Unlawful Command Influence (UCI)*

We review allegations of UCI de novo. *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994). Article 37(a), UCMJ, 10 U.S.C. § 837(a), states in part: "No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." The appellant has the initial burden of raising UCI. *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994). Once the issue of command influence is properly placed at issue, "no reviewing court may properly affirm findings and sentence unless [the court] is persuaded beyond a reasonable doubt that the findings and sentence have not been affected by the command influence." *United States v. Thomas*, 22 M.J. 388, 394 (C.M.A. 1986). At the appellate level, we evaluate UCI in the context of a completed trial using the following factors: "[T]he defense must (1) show facts which, if true, constitute [UCI]; (2) show that the proceedings were unfair; and (3) show that [UCI] was the cause of the unfairness." *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 2003) (citing *Stombaugh*, 40 M.J. at

213); *see also United States v. Simpson*, 58 M.J. 368, 374 (C.A.A.F. 2003); *United States v. Reynolds*, 40 M.J. 198, 202 (C.M.A. 1994).

The appellant contends the publishing of the Air Force Times article and its distribution on base and amongst members of his unit made it impossible for him to receive a fair trial and fair consideration from the convening authority during the clemency stage of his case. The appellant elected not to raise this issue at trial; the sole evidence of his claims comes from his affidavit submitted on appeal. We find the appellant has not met his burden of establishing facts that would constitute unlawful command influence. To the extent he is arguing that pretrial publicity adversely affected his court-martial, we also find he has failed to meet his burden in that regard. *Simpson*, 58 M.J. at 372 (stating that the defense may raise the issue of unfair pretrial publicity by demonstrating either presumed or actual prejudice). As noted above, the members of the court-martial panel had no knowledge of this article. Furthermore, even assuming the convening authority was exposed to the purported article, there is no reason to believe that the convening authority would be adversely affected by a newspaper article when deciding whether to grant clemency to the appellant.

*Pretrial Punishment*

Article 13, UCMJ, prohibits pretrial punishment:

> No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

At trial, the appellant and his defense counsel told the military judge that the appellant had not been subjected to illegal pretrial punishment under Article 13, UCMJ. Through two declarations submitted on appeal, the appellant now argues he is entitled to sentence credit because he was illegally punished prior to trial. He also argues his counsel were ineffective for not raising this issue.

The appellant contends he was subjected to punishment when, after law enforcement became aware that his infant daughter had been injured,[6] he was

---

[6] After the death of their infant son, the appellant and his wife had a second baby in late April 2012. On 24 September 2012, after noticing that the infant's arm was limp, the appellant's wife took her to a pediatrician. Full skeletal surveys found seventeen arm and leg fractures of a type that are caused by pulling, yanking, or twisting

(1) restricted to a dormitory room for 72 hours and then required to stay on base for 30 days, (2) required to live on base until his trial, and (3) issued a protection order that prohibited him from seeing and calling his children. The trial defense counsel's detailed declarations described their investigation of these events, what they found during that investigation, and the reasons they believed the commander's actions in requiring the appellant to live on base and have restricted access to his children were undertaken to protect the appellant and his children, and not as punishment, and could actually benefit the appellant.

Our superior court has held that an appellant's failure to raise the issue of illegal pretrial confinement at trial "waives that issue for purposes of appellate review absent plain error." *United States v. Inong*, 58 M.J. 460, 465 (C.A.A.F. 2003). In subsequent case law, however, that court clarified that it is forfeiture that is tested for plain error; waiver is not. *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (stating that military courts had failed to "consistently distinguish between the terms 'waiver' and 'forfeiture.'"). Waiver is the "intentional relinquishment or abandonment of a known right," which precludes appellate review of an issue. *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (internal quotation marks omitted). Forfeiture is "the failure to make the timely assertion of a right" leading to plain error review on appeal. *Id.*

Here, the appellant and his three trial defense counsel did not raise any issue associated with any aspects of the appellant's pretrial treatment. When specifically asked by the military judge regarding illegal pretrial punishment, the appellant and his defense counsel specifically disavowed any Article 13, UCMJ, issue. Under these circumstances, we find the appellant waived this issue. Furthermore, while the appellant's waiver of this issue prevented a full development of his claims on the record, based on the information that is available, we find trial defense counsel's conclusions to be rational and their decision not to raise an Article 13, UCMJ, issue to be reasonable. Accordingly, trial defense counsel were not ineffective for not raising this issue at trial.

The appellant also argues he should be given confinement credit for 22 March 2013 (the day findings were announced) as he was restricted to his room overnight under armed guard while he awaited the sentencing proceeding the following day. We review de novo whether the restriction was tantamount to confinement based on a totality of the conditions imposed. *United States v. King*, 58 M.J. 110, 113 (C.A.A.F. 2003). We agree with the appellant and order relief in our decretal paragraph. *See United States v. Mason*, 19 M.J. 274 (C.M.A. 1985).

---

the extremities and were highly specific for child abuse. The appellant was acquitted of aggravated assault and child endangerment regarding his daughter.

*Sentence Severity*

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

The appellant next avers his sentence is inappropriately severe. We disagree. We consider whether the appellant's sentence was appropriate "judged by 'individualized consideration' of [the appellant] 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)). We have given individualized consideration to this particular appellant, the nature and seriousness of his offense, the appellant's record of service, and all other matters contained in the record of trial. We find the approved sentence was clearly within the discretion of the convening authority, was appropriate in this case, and was not inappropriately severe.

*Conclusion*

The appellant will be credited with one day against his sentence to confinement. The findings of guilty as to Charge III (Specifications 1 and 2) and Charge IV (Specification 1) are set aside, and those Charges and Specifications are dismissed. The remaining findings (Charge II and its Specification) and the approved sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the modified findings and the approved sentence are

AFFIRMED.

FOR THE COURT

LAQUITTA J. SMITH
Appellate Paralegal Specialist