# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

### No. ACM 40705

————————————

### UNITED STATES
*Appellee*

v.

### Christian M. CASTILLO
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary
Decided 11 March 2026

————————————

*Military Judge*: Pilar G. Wennrich (pretrial motion); Elijah F. Brown (pretrial motion); Tyler B. Musselman (trial).

*Sentence*: Sentence adjudged 21 February 2023 by GCM convened at Scott Air Force Base, Illinois. Sentence entered by military judge on 27 April 2023: Bad-conduct discharge, confinement for 4 months, and reduction to E-1.

*For Appellant*: Major Jordan L. Grande, USAF.

*For Appellee*: Colonel G. Matt Osborn, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Major Catherine D. Mumford, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before DOUGLAS, MCCALL, and KUBLER, *Appellate Military Judges*.

Judge MCCALL delivered the opinion of the court, in which Senior Judge DOUGLAS and Judge KUBLER joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MCCALL, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas, of one specification of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] Appellant was sentenced by the military judge to a bad-conduct discharge, four months confinement, and a reduction to the grade of E-1. Consistent with the plea agreement, the convening authority suspended the reduction in rank for six months and waived all automatic forfeitures for six months for the benefit of Appellant's dependents.

Appellant raises three issues on appeal, which we have reworded: (1) whether factual inconsistencies or the military judge's failure to instruct the Appellant on mistake of fact as to whether victim was asleep made Appellant's plea improvident, (2) whether the adjudged sentence is inappropriately severe, and (3) whether Appellant is entitled to relief for post-trial delay. We find no error materially prejudicial to Appellant's substantial rights and affirm the findings and sentence.

# I. BACKGROUND

Appellant plead guilty to one specification of abusive sexual contact of his wife, CC, while she was asleep, between November 2017 and April 2018.[2] On this one occasion, while lying in bed next to his sleeping wife, Appellant reached across her and fondled her breasts with his hand. Appellant had no prior consent for touching CC while she was asleep. Appellant knew CC was asleep and was unable to consent to this touching. While Appellant was deployed in September 2021, he disclosed the details of this abusive sexual contact during a phone conversation with CC. Additional details were disclosed by Appellant via a social media messaging account. CC reported Appellant's misconduct to the Air Force Office of Special Investigations (OSI) who opened an investigation, ultimately leading to the convicted offense.

Appellant offered to plead guilty to the specification of abusive sexual contact on a single occasion. Upon acceptance of Appellant's guilty plea, the terms

---

[1] References to the punitive articles are to the *Manual for Courts-Martial, United States* (2016 ed.). All other references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] This charge for violation of Article 120, UCMJ, *abusive sexual contact*, specifically stated that Appellant "touch[ed] the breasts of [CC], with an intent to gratify his sexual desire, when he knew or reasonably should have known that [CC] was asleep." Appellant was also charged with a specification in violation of Article 120, UCMJ, *sexual assault*, which was withdrawn and dismissed with prejudice per the terms of the plea agreement.

of the plea agreement required the military judge to enter a sentence that provided a minimum of two months confinement and a maximum of ten months confinement. The plea agreement stipulated the military judge "must adjudge a Bad[-]Conduct Discharge, but may not adjudge a Dishonorable Discharge."

## A. Stipulation of Fact

As part of the plea agreement, Appellant agreed to enter into a "reasonable stipulation of fact" with the Government "concerning the events surrounding the Charge and Specification" to which Appellant plead guilty. The stipulation of fact is six pages long, with an additional 19 pages of attachments which includes an audio recording of a telephone conversation and 16 pages of social media messages between CC and Appellant. Appellant agreed all facts in the stipulation were true and admissible for all purposes to include the findings and sentencing.

In the stipulation of fact, Appellant detailed how he "fondled [CC]'s breasts with his hand" while she was asleep in the bed next to him, and how on this occasion, Appellant knew she was asleep and was unable to consent to this sexual touching. Appellant indicated he "became aroused by touching her breasts while knowing she was asleep." Appellant further stated CC had given no prior consent or reason for Appellant to believe he had her consent. Finally, Appellant indicated he knew CC had been previously sexually assaulted while asleep, and had a fear of being sexually assaulted in her sleep.

## B. Plea Inquiry

During the plea inquiry, in addition to confirming with Appellant each paragraph of the stipulation of fact and all the elements of the offense, the military judge clarified that Appellant was charged with touching CC while she was asleep and the military judge would consider the guilty plea "solely under the charged theory of asleep." Appellant agreed he understood the theory of criminal liability and testified:

> One night [CC] was asleep in bed next to me, I believed that she was asleep because she went to bed a few hours before, and she wasn't talking or moving. I could also hear her breathing slowly and deeply-deeply, like a sleeping person would. I also noticed her eyes were closed.

When questioned by the military judge how Appellant knew CC was not aware that the contact was occurring, Appellant responded, "Because she was asleep, Your Honor." He further testified a reasonable person would have known CC was asleep because of her "breathing pattern, and level of wakefulness, arousability," and again indicated he was personally aware and was of the understanding that at the time of sexual contact, CC was asleep. In response to the military judge's questions, Appellant also indicated he did not

3

believe he had consent to touch CC while she was asleep, and his actions were wrong as he did not have her permission to touch her. Appellant was asked, "Do you believe that anything in your sexual history together gave you the authority or the consent to engage in conduct that evening," to which Appellant replied, "No, Your Honor."

**C. Mistake of Fact as to Sleep Discussion**

Appellant's plea agreement did not provide the general provision for waiver of all waivable motions. However, during a colloquy between Appellant and the military judge, Appellant preserved one motion regarding sex offender registration during sentencing, and waived all other motions. Among the waived motions was a Mil. R. Evid. 412 motion by the Defense. Appellant confirmed he was not offering Mil. R. Evid. 412 evidence during his guilty plea proceeding, but clarified there are references in the attachments to the stipulation of fact which "tie back" to evidence Appellant would have offered had his Mil. R. Evid. 412 motion been granted.

The military judge explained to Appellant how the Mil. R. Evid. 412 motion could have supported a mistake of fact defense:

> Evidence could very well be relevant to show consent, which would therefore tend to butt up against or contradict the-go against the [G]overnment's burden beyond a reasonable doubt to show that the victim was asleep and unable to consent. Or the evidence could have done the same, essentially, attacked the [G]overnment's burden to show that the accused knew or reasonably should have known that [CC] was asleep and unable to consent.

The military judge discussed with Appellant in detail the substance of the motions and the effect of waiving them, and affirmed that Appellant knowingly entered into a waiver.

## II. DISCUSSION

**A. Providency of Plea**

Appellant contends his guilty plea was not provident because the military judge failed to resolve factual inconsistencies in the record showing CC was awake or that Appellant may have believed CC was awake and failed to explain the defense of mistake of fact as to whether CC was awake. We find the military judge did not abuse his discretion and find Appellant's plea provident.

**1. Law**

The standard for reviewing a military judge's decision to accept a plea of guilty is an abuse of discretion. *United States v. Inabinette,* 66 M.J. 320, 321

(C.A.A.F. 2008). A military judge abuses his discretion if he accepts a guilty plea without an adequate factual basis to support it. The criteria used to determine an abuse of discretion is the "substantial basis test," which looks at "whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id.* at 322. "[O]nce a military judge has accepted a plea as provident and has entered findings based on it, an appellate court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and the accused's statements." *United States v. Saul,* 86 M.J. 30, 33 (C.A.A.F. 2025) (citation omitted).

When entering a guilty plea, the accused should understand the law in relation to the facts. *United States v. Care*, 40 C.M.R. 247, 251 (C.M.A. 1969). The record of trial must show the military judge "questioned the accused about what he did or did not do, and what he intended." *Id.* at 253 (citations omitted). This is to make clear to the military judge whether the accused's acts or omissions constitute the offense to which he or she is pleading guilty. *Id.* (citations omitted).

"In reviewing the providence of [an a]ppellant's guilty pleas, [this court] considers his colloquy with the military judge, as well any inferences which may reasonably be drawn from it." *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007) (citation omitted).

In cases where there is a stipulation of fact, reviewing courts "must accept all of the facts in the parties' stipulation as true." *United States v. Castro*, 81 M.J. 209, 211 (C.A.A.F. 2021) (citation omitted). The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (citation omitted). "If an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *Id.*

"[W]hen a plea of guilty is attacked for the first time on appeal, the facts will be viewed in the light most favorable to the [G]overnment." *United States v. Arnold*, 40 M.J. 744, 745 (A.F.C.M.R. 1994) (citation omitted).

**2. Analysis**

There is nothing in the record of trial which raises a substantial question regarding Appellant's guilty plea with regard to either the factual basis or the law. The military judge's inquiry was thorough and clearly demonstrated Appellant understood the law in relation to the facts in Appellant's case. In particular, the military judge repeatedly discussed how this was a "sleep case," and clarified Appellant was charged with touching CC while she was asleep. In his own words, Appellant described how CC was sleeping next to him at the

time he touched her, gave further information to indicate how he knew she was asleep, and again reiterated she was asleep. Appellant also testified a "reasonable person" would have known she was asleep and that he was personally aware she was asleep at the time of the sexual contact. The stipulation of fact describes Appellant touching CC while he knew she was asleep. There are no factual inconsistencies and none of the military judge's questions or the information raised in the stipulation or in Appellant's testimony raise any evidence to the contrary.

Appellant references potential inconsistencies that *may* have been raised by evidence which *may* have been admitted had Appellant been successful in his Mil. R. Evid. 412 motion. As this evidence was never raised, there was no matter inconsistent with the plea for the military judge to resolve. Also unclear is whether the content of the Mil. R. Evid. 412 motion was ever meant to raise a defense for the convicted offense of abusive sexual contact, or if it instead raised a mistake of fact defense for the sexual assault specification dismissed per the plea agreement. This is not a situation where Appellant plead guilty and then later raised an issue inconsistent with his plea. Appellant clearly informed the military judge that he waived this motion, indicated he had no intention of introducing the evidence from the motion, and the military judge's discussion with Appellant about his waiver of this motion closed any further discussion on this issue. While Appellant argues the military judge "failed to explain the defense of mistake of fact as to whether CC was awake," he is mistaken because indeed, the military judge explained this defense when discussing Appellant's waiver of his Mil. R. Evid. 412 motion. The military judge's inquiry clearly demonstrates Appellant dismissed the mistake of fact defense by waiving the issue altogether, and Appellant consistently testified to his knowledge that CC was asleep at the time the abusive sexual contact occurred.

**B. Sentence Severity**

Appellant contends the bad-conduct discharge is not appropriate given his service record, his remorse, the nature of the offense, and the wishes of the victim. We find the sentence is correct in law and fact and further find the adjudged sentence appropriate.

**1. Additional Background**

Per the terms of his plea agreement, Appellant offered to plead guilty to a specification of abusive sexual contact on a single occasion, in exchange for the withdrawal and dismissal, with prejudice, of a specification of sexual assault on divers occasions, and the exception of the words "divers occasions" from the abusive sexual contact specification. In addition to the confinement limitations and the requirement for the military judge to adjudge a bad-conduct discharge, the plea agreement stipulated that any reduction in rank and any forfeitures

would be suspended and/or deferred and/or waived for the maximum period of time for the benefit of Appellant's spouse and son. The only other limitation on the sentence was that a fine could not be adjudged.

Appellant served in the Air Force for nine years and at trial the Government introduced only one documented instance of misconduct occurring prior to this charged offense. Appellant served as a medical and aeromedical evacuation technician and is credited with saving a life, recovering lost personnel, and assisting hundreds of patients. Appellant deployed twice and served in a combat zone.

As part of the victim's submission to the convening authority, CC asked for leniency for her husband. Specifically, CC asked the convening authority to "reduce the sentence imposed upon [Appellant] to the fullest extent possible" and requested Appellant's term of confinement be reduced to two months.

**2. Law**

This court reviews sentence appropriateness de novo. *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (citation omitted). We may affirm only so much of the sentence as we find correct in law and fact. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *Sauk,* 74 M.J. at 606 (alteration in original) (citation omitted). Although this court is empowered to "do justice," and has broad discretion in determining whether a particular sentence is appropriate, it is not authorized to grant mercy. *See United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (citing *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

A Court of Criminal Appeals must take a plea agreement into account in performing its sentence appropriateness review. *United States v. Spencer*, __ M.J. __, No. 25-0192, 2026 CAAF LEXIS 143, at *6 (C.A.A.F. 9 Feb. 2026). If there is no evidence to the contrary in plea agreement cases, an "accused's own sentence proposal is a reasonable indication of its probable fairness to him." *United States v. Fields,* 74 M.J. 619, 625 (A.F. Ct. Crim. App. 2015) (citation omitted). To ascertain "the fairness and thus the appropriateness of an adjudged sentence," this court can consider the context in which the parties reached the plea agreement, including the benefits derived by the Appellant. *United States v. Arroyo*, 86 M.J. 89, 90 (C.A.A.F. 2025). However, even in cases with a plea agreement, this court still has "a duty to determine on its own whether the sentence agreed to by the parties is appropriate." *Spencer,* unpub. op. at *7 (citation omitted).

### 3. Analysis

Appellant focuses on his remorse, the wishes of the victim, the nature of the offense, and his service record in arguing the bad-conduct discharge is too severe a punishment. While the victim wishes for leniency, this court must also consider the nature and seriousness of the offense in this case. Appellant touched his spouse in a sexual manner while he knew she was asleep and not able to consent, and knew she did not consent. Appellant did this for his own sexual gratification and testified there was nothing in their relationship which would have led him to believe he had CC's consent on this occasion. Appellant knew that what he did was wrong. His actions were even more egregious because he knew CC had been sexually assaulted while she was sleeping in the past, and had an ongoing fear of being sexually assaulted while she was asleep. Even without considering the benefits of the plea agreement on Appellant, we find this sentence appropriate based on the nature and seriousness of the offense, appellant's record of service, and all other matters contained in the record of trial.

However, as the plea agreement is a matter contained in the record of trial, this court may also consider the benefits Appellant received from the plea agreement. *Spencer,* unpub. op. at *6 (citation omitted). In exchange for his guilty plea, the Government withdrew and dismissed with prejudice a specification of sexual assault on divers occasions, and excepted out the words "on divers occasions" to the abusive sexual contact charge to which Appellant plead guilty. This benefit reduced Appellant's criminal exposure. It also potentially limited his maximum confinement as the maximum allowed punishment if convicted of all charges, was forfeiture of all pay and allowances, confinement for 30 years, and a mandatory dishonorable discharge. The plea agreement also enabled Appellant to provide financial assistance to his dependents by not allowing for adjudged fines, and requiring all reductions in rank be suspended, and forfeitures be waived. We also consider Appellant bargained for the sentence he received in his plea agreement. Appellant received four months' confinement, reduction to E-1, and a bad-conduct discharge. This sentence clearly met the plea agreement limitations allowing for confinement between two and ten months and requiring the military judge to adjudge a bad-conduct discharge. Appellant, with the assistance of competent counsel, negotiated for a bad-conduct discharge in a favorable plea agreement. There is no evidence that the bad-conduct discharge or the other terms of the sentence in the plea agreement are not fair. We have determined the sentence agreed to by the parties is appropriate.

We have reviewed and considered the Appellant, the nature and seriousness of the offense, the Appellant's record of service, and all matters contained

in the record of trial, as well as Appellant's plea agreement limits. We find Appellant's approved sentence appropriate. *See Sauk*, 74 M.J. at 606.

**C. Post-Trial Delay**

Appellant was sentenced on 21 February 2023. The convening authority made his decision on action on 5 April 2023 and entry of judgment was signed by the military judge on 27 April 2023. The court reporter began to transcribe the record in Appellant's case on 19 May 2023 and sent the completed transcription for review on 1 November 2023.[3] The court reporter certified the transcript on 27 November 2023 and sent all documents to the legal office for assembly of the record of trial (ROT).

On 2 January 2024, the installation legal office, for the special court-martial convening authority (SPCMCA), mailed a copy of the ROT to Appellant which was "returned as undeliverable" on 18 January 2024.[4] On 4 February 2024, the legal office finished assembling additional copies of the ROT, and on 5 February 2024, the lead military justice paralegal was "informed that ROTs [were] brought to [the general court-martial convening authority's (GCMCA's) legal office] or picked up."

Around 16 September 2024, the installation legal office became aware of miscommunication with the GCMCA's legal office over the status of the records of several cases and discovered the ROT in this case was missing. The installation legal office assembled the ROT again and delivered it to the GCMCA legal office on 3 October 2024.[5] The case was docketed with this court on 4 November 2024, 622 days after Appellant was sentenced. Appellant requested, and received, eight enlargements of time and filed his brief 330 days after the case was initially docketed.

Appellant contends his due process rights were violated due to post-trial delay. Alternatively, Appellant believes he is entitled to Article 66(d), UCMJ,

---

[3] The court reporter was balancing a large number of cases, faced software issues that impeded transcription for over a month, and faced a personal tragedy during this period, all of which help explain this portion of the post-trial delay.

[4] In the post-trial chronology, the Government indicates it is unaware if a second attempt was made to send Appellant a copy of the ROT. A copy of the ROT was sent to Appellant via DoD SAFE on 3 October 2024.

[5] Our review identified the stipulation of fact in the ROT is not the version reviewed at Appellant's court-martial. Per the transcript, the version at trial had a pen and ink change in paragraph 21, which is not reflected in the copy currently in the ROT. This error was not identified by Appellant as prejudicial, and we find no prejudicial impact on Appellant's material rights.

10 U.S.C. § 866(d), relief due to the excessive and unreasonable delay in his case.

**1. Law**

"Due process entitles convicted service members to a timely review and appeal of court-martial convictions." *United States v. Moreno,* 63 M.J. 129, 132 (C.A.A.F. 2006) (citation omitted). "This court reviews de novo whether an appellant's due process rights are violated because of post-trial delay." *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *Moreno*, 63 M.J. at 135).

In determining whether appellate review is timely, the United States Court of Appeals for the Armed Forces (CAAF) identified thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. *Moreno*, 63 M.J. at 142. Specifically, our superior court established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record of trial was not docketed with the Court of Criminal Appeals (CCA) within 30 days of the convening authority's action, or (3) the CCA did not render a decision within 18 months of docketing. *Id.*

In *Livak,* this court recognized "the specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine an unreasonable delay under the new procedural rules." 80 M.J. at 633. Accordingly, this court established an aggregated sentence-to-docketing 150-day threshold for facially unreasonable delay in cases referred to trial on or after 1 January 2019. *Id.*

In determining whether the delay resulted in a due process violation, this court uses the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), as adopted by the CAAF in *Moreno*: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." 63 M.J. at 135 (citations omitted).

The CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). "Of these, the most serious is the last [type], because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Additionally, if an appellant has not shown prejudice from the delay, this court cannot find a due process violation unless the delay is so egregious as to

"adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Independent of any due process violation, this court may provide appropriate relief where there is "excessive delay in the processing of the court-martial after the judgment was entered into the record . . . ." Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2). If a CCA decides relief is warranted for excessive post-trial delay under Article 66(d)(2), UCMJ, the relief must be "appropriate," meaning it must be suitable considering the facts and circumstances surrounding that case. *United States v. Valentin-Andino*, 85 M.J. 361, 363 (C.A.A.F. 2025). This does not require a CCA to provide objectively reasonable relief and it does not obligate a CCA to explain its reasoning regarding the relief it does provide. *Id. at* 367.

### 2. Analysis

Appellant argues his case is "wrought with inexplicable delay at each stage in the post-trial process." According to Appellant, the case is so fraught with "institutional neglect" and "gross indifference to post-trial processing," the time it took to provide Appellant a copy of the ROT delayed his access to appellate defense counsel and ultimately his ability to assist in his appeal. The Government argues while unreasonable, this delay does not rise to gross indifference or institutional neglect and Appellant suffered no prejudice. The Government further contends "the circumstances that caused the delay in this case are unlikely to recur, and therefore discretionary relief is not warranted. Both parties agree there was a facially unreasonable delay in this case as it took 622 days from sentencing to docketing, far in excess of the 150-day benchmark established in *Livak*. We agree, and turn to the *Barker* analysis to determine whether this delay also constituted a due process violation.

The first and second *Barker* factors, the length and reason for the delay, both weigh heavily in Appellant's favor. Due to the court reporter's workload, it took the Government over six months to complete the transcript, and the ROT was not assembled and prepared for delivery until 349 days after Appellant's sentence. At this point, there was already a "facially unreasonable delay." To make a bad situation even worse, the installation legal office had miscommunicated with the GCMCA legal office as they thought the ROT had been processed and forwarded, when in fact, it had not. Yet, it took over 200 days for any government legal office to realize the ROT had not been delivered or processed. We considered two additional aspects of this failure to communicate: the processing times were already exceeded so timeliness of this case should have been a high priority, and the installation legal office and the GCMCA legal office were located on the same installation.

The third and fourth *Barker* factors weigh in favor of the Government. Prior to Appellant's assignment of error brief to this court, there was no prior claim or demand for speedy appellate review. Furthermore, there is no prejudice caused by the delay. Appellant's only proffer of prejudice is that the post-trial delay impacted his ability to assist in his appeal because he did not have access to his appellate counsel. However, in this case, Appellant plead guilty, received the benefits of a plea agreement, and while he raises a sentence severity and post-trial delay error, he does not provide any evidence of particularize prejudice. Appellant did not meet any of the three types of cognizable prejudice identified by our superior court: he was not subject to oppressive incarceration, he did not have particularized anxiety, and the delay did not impair Appellant's grounds for appeal or his ability to present a defense.

Although the 622-day period between Appellant's sentencing and the docketing of this case is unusually lengthy, we view this delay as an anomaly. In our analysis, we also consider the 330 days afforded to the Appellant for review. Given the specific facts of this case, the delay does not rise to a level that would erode public confidence in the military justice system. Accordingly, after applying the *Barker* factors, and in light of *Toohey*, we find no due process violation.

Absent a showing of actual prejudice, Appellant asks us to utilize our statutory authority under Article 66, UCMJ, to grant relief for the post-trial delay. Considering all the facts and circumstances of Appellant's case, we conclude relief under Article 66(d)(2), UCMJ, is not warranted.

## III. Conclusion

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court