# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman DEMARRIUS R. JEFFERS
### United States Air Force

## ACM 38664 (recon)

## 28 January 2016

Sentence adjudged 10 June 2014 by GCM convened at Aviano Air Base, Italy. Military Judge: Christopher F. Leavey (arraignment) and Dawn R. Efflein (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 24 months, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Johnathan D. Legg and Captain Michael A. Schrama.

Appellate Counsel for the United States: Lieutenant Colonel Roberto Ramirez; Captain Tyler B. Musselman; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and MAYBERRY
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

ALLRED, Chief Judge:

Appellant was tried at a general court-martial before a military judge alone. In accordance with his pleas, he was found guilty of drunken operation of a vehicle resulting in personal injury, involuntary manslaughter, reckless endangerment, and negligent homicide, in violation of Articles 111, 119, and 134, UCMJ, 10 U.S.C. § 911, 919, 934. The adjudged sentence consisted of a bad-conduct discharge, 2 years and 6 months of

confinement, and reduction to E-1. In accordance with a pretrial agreement, the convening authority reduced confinement to 24 months and approved the remainder of the sentence as adjudged.

Appellant argued that his conviction of negligent homicide must be dismissed in light of his conviction of involuntary manslaughter for the same misconduct. In an earlier opinion issued by this panel on 28 October 2015, we agreed. We set aside the Additional Charge and Specification and reassessed the sentence to the same as that approved by the convening authority.

The Government filed for en banc reconsideration on the basis of an error in law regarding the standard of review for claims of unreasonable multiplication of charges and the court's reference to the persuasive reasoning of the unpublished opinion of *United States v. Chin*, ACM 38452 (recon) (A.F. Ct. Crim. App. 12 June 2015) (unpub. op). The Government contends that, because the Air Force Judge Advocate General (TJAG) has certified *Chin* for review pursuant to his authority under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2), the case is inchoate and has no persuasive value. In the alternative, the Government moves this court to hold this case in abeyance until our superior court renders a decision in *Chin*.[1] Appellant disagrees with both the Government's argument regarding the persuasive authority of inchoate decisions and the contention that we should abate these proceedings.

We have denied the motion for en banc reconsideration, but we granted the motion for reconsideration by this panel. We have corrected the standard of review. We recognize that our decisions are inchoate until further action is taken on them. However, we reject the Government's argument that our decisions do not have persuasive authority while inchoate. We also deny the motion to abate the appellate review of this case. Upon reconsideration, we set aside the Additional Charge and its Specification and reassess the sentence to that which was approved by the convening authority.

*Background*

Late in the evening of 1 June 2013, Appellant drove himself and a friend, Airman First Class (A1C) DF, to a club about an hour from the overseas base to which they were assigned. After drinking and socializing until about 0200 the following morning, they drove to a second club closer to base where they engaged in more drinking. Shortly before 0500, Appellant and A1C DF left the second club. By this time both individuals were quite drunk. Nevertheless, the two drove away with Appellant behind the wheel of his car and A1C DF in the passenger seat.

---

[1] The Court of Appeals for the Armed Forces heard oral argument on *United States v. Chin*, ACM 38452 (recon) (A.F. Ct. Crim. App. 12 June 2015) (unpub. op.) on 13 January 2016.

Shortly thereafter, Appellant was driving on a two-lane highway at about twice the posted speed limit of 50 kilometers per hour. As he approached an intersection, Appellant steered into the lane of oncoming traffic. In doing so, Appellant nearly hit a car driven by Mrs. KL—the spouse of an Air Force member—who managed to avoid a head-on collision only by swerving into the lane of traffic Appellant's car should have occupied.

After narrowly missing the vehicle of Mrs. KL, Appellant's car ran off the road, knocked over a light pole, and continued its trajectory. The car then tore through a wire fence and crashed into several cars in a parking lot. Passersby dragged the dazed Appellant from his vehicle, but before they realized his passenger was also in the car it burst into flames.

A1C DF was subsequently pronounced dead at the scene. Appellant was taken to the hospital, where he was treated for third-degree burns to his legs and lacerations to his legs, face, and head. Appellant's blood was drawn about 90 minutes after the accident. Testing by the local hospital indicated 0.189 grams of alcohol per 100 milliliters of blood, while subsequent testing by the Armed Forces Medical Examiner System (AFMES) indicated a blood alcohol level of 0.180.

*Inchoate Opinions*

Decisions by the service courts of criminal appeals are not self-executing. That is, we do not issue mandates but instead depend on the Judge Advocate General and other officials to execute our decisions. *United States v. Miller,* 47 M.J. 352, 361 (C.A.A.F. 1997). In *United States v. Plumb*, 47 M.J. 771 (A.F. Ct. Crim. App. 1997), the Government argued to us that our superior court's decisions were not binding during the time they were inchoate pending a petition to the Supreme Court. *Id*. at 773–74. Rejecting that argument, this court declared, "We do not believe that the inchoate nature of our decisions deprives them of validity or value to our lower courts any more than we believe an appeal to the Supreme Court invalidates a decision of USCAAF." *Id.* at 774. This decision was in accordance with our superior court's declaration that—absent a superseding statute, intervening decision by our superior court, or decision by the Supreme Court of the United States—a decision by our superior court is "absolutely binding" on the service courts. *United States v. Allbery*, 44 M.J. 226, 228 (C.A.A.F. 1996).

The year following our decision in *Plumb,* the Government again raised the issue of inchoate opinions in *United States v. Clack*, 47 M.J. 813, 816–17 (A.F. Ct. Crim. App. 1998). In that case we stated:

> The government argues that our superior court's precedent is "inchoate," that is not binding upon us until the case in which

it is announced becomes final in law. *See* Article 71(c), UCMJ, 10 U.S.C. § 871(c). For example, if the government asks the United States Supreme Court to grant *certiorari* in the case, and the Court does, we are at liberty to ignore our superior court for one or more years while the case stays on appeal. Adopting that proposition would inject chaos into an already unwieldy legal system. Trial judges and advocates, who in the end must apply the never ending stream of judicial precedent, would need a matrix system of charts to track the moment-by-moment status of every appellate opinion within their jurisdiction to know what "precedent" to follow even though many "appeals" drag on for years.

Moreover, adopting such a proposition would hinder, rather than promote, respect between the various appellate levels if those below could routinely ignore those above because the "case was not final." **We need not discuss esoteric concepts of "inchoateness" to get to the bottom line here: We expect Air Force trial judges to follow our legal precedent when announced, just as the Court of Appeals for the Armed Forces expect us to follow theirs.**

*Id*. at 816–17 (emphasis in original).

*United States v. Chin* is an unpublished decision and does not serve as precedent. Before us, the Government now argues that we should ignore the persuasive authority of that decision because it is inchoate due to TJAG's certificate of review with our superior court. We find the reasoning in *Chin* persuasive and choose to reference it in this opinion; its value as persuasive authority is not diminished by its inchoate nature.

We also reject the Government request to abate these appellate proceedings. We note that we have previously relied on our published appellate decisions as binding precedent, even though inchoate, without objection by the Government. For example, on 26 March 2015, we issued a decision on whether Air Education and Training Command Instruction 36-2909, *Professional and Unprofessional Relationships* (2 March 2007), was a punitive regulation. *United States v. LeBlanc*, 74 M.J. 650, 654–56 (A.F. Ct. Crim. App. 2015). The appellant's petition for review was denied on 6 July 2015. *United States v. LeBlanc*, 75 M.J. 17 (C.A.A.F. 2015) (mem.). While the *LeBlanc* decision was inchoate, we relied on it as binding precedent on 9 April 2015 in *United States v. Crawford*, ACM 38408 (A.F. Ct. Crim. App. 9 April 2015) (unpub. op.). The Government did not object to our relying on this inchoate opinion as binding legal precedent. We cite this example to illustrate that we routinely cite and rely on decisions by this court and our superior court that are inchoate as they are pending further review.

As we have previously stated, following the Government's suggestion would add uncertainty to the judicial process. We conclude that greater certainty is achieved when cases provide precedential (or persuasive) value when decided and issued, regardless of their inchoate nature.

*Multiple Offenses*

Appellant's convictions of both involuntary manslaughter and negligent homicide are based upon the death of A1C DF. Appellant argues that both convictions for the same death cannot stand and his conviction for negligent homicide must therefore be dismissed.

*A. Waiver*

In the present case, Appellant entered into a pretrial agreement containing a "waive all waivable motions" provision. When the military judge asked what motions would have been raised absent that provision, trial defense counsel stated he would have raised a claim of unreasonable multiplication of charges with regard to the offenses of involuntary manslaughter and negligent homicide. The military judge then discussed this possible motion with Appellant, who affirmed that he wished to give up this motion in order to obtain the benefit of his pretrial agreement.

In *United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009), our superior court held that a "waive all waivable motions" provision waived, rather than forfeited, a claim of multiplicity on appeal and therefore the multiplicity claim was extinguished and could not be raised on appeal. The court held multiplicity was waived because the pretrial agreement required the appellant to waive all waivable motions. The military judge conducted a thorough inquiry to ensure the appellant understood the effect of this provision, and the appellant explicitly indicated his understanding that he was waiving the right to raise any waivable motion. *Id.* The court also stated the same position would result for claims of unreasonable multiplication of charges raised on appeal. *Id.*

Ordinarily, an affirmative waiver of a claim of multiplicity and unreasonable multiplication of charges would end our inquiry. As we recently held, however, Article 66(c), 10 U.S.C. § 866(c), empowers the service courts to consider claims of multiplicity or unreasonable multiplication of charges even when those claims have been waived. *United States v. Chin,* ACM 38452 (recon) (A.F. Ct. Crim. App. 12 June 2015) (unpub. op.). In *Chin,* we declared, "Notwithstanding *Gladue*, under Article 66(c), UCMJ, this court may affirm only such findings of guilty and sentence as we 'find[] correct in law and fact and determine[], on the basis of the entire record, should be approved.'" *Id.* (alterations in original) (quoting *United States v. Rivera*, Army 20130397, unpub. op. at 3 (Army Ct. Crim. App. 15 December 2014) (quoting *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001)). Our position in *Chin* is consistent with *United States v. Claxton*,

32 M.J. 159, 162 (C.M.A. 1991), in which our superior court held that a service court need not apply waiver or plain error review in the interest of justice. *See also United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990) (holding that a military court of criminal appeals has "awesome, plenary, *de novo* power of review . . . to, indeed, 'substitute its judgment' for that of the military judge" and need not apply deferential standards of review when it deems such deference inappropriate).

Because of the unreasonable multiplication of charges so plainly presented in this case, we elect to exercise our plenary, de novo power of review to consider whether convictions for both involuntary manslaughter and negligent homicide should be approved.[2]

*B. Multiplicity and Unreasonable Multiplication of Charges*

We review claims of multiplicity de novo. *United States v. Paxton*, 64 M.J. 484, 490 (C.A.A.F. 2007). We review claims of unreasonable multiplication of charges for an abuse of discretion. *United States v. Campbell,* 71 M.J. 19, 22 (C.A.A.F. 2012). In the context of multiplicity and unreasonable multiplication of charges, three concepts may arise: multiplicity for purposes of double jeopardy, unreasonable multiplication of charges as applied to findings, and unreasonable multiplication of charges as applied to sentence.

Multiplicity in violation of the Double Jeopardy Clause of the Constitution[3] occurs when "a court, contrary to the intent of Congress, imposes multiple convictions and punishments under different statutes for the same act or course of conduct." *United States v. Anderson*, 68 M.J. 378, 385 (C.A.A.F. 2010) (quoting *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006)) (emphasis omitted). Accordingly, an accused may not be convicted and punished for two offenses where one is necessarily included in the other, absent congressional intent to permit separate punishments. *See United States v. Teters*, 37 M.J. 370, 376 (C.M.A. 1993); *United States v. Morita*, 73 M.J. 548, 564 (A.F. Ct. Crim. App. 2014), *rev'd on other grounds*, 74 M.J. 116 (C.A.A.F. 2015). The Supreme Court laid out a separate elements test for analyzing multiplicity issues: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "Accordingly,

---

[2] We have also considered the mandate issued by our superior court in *United States v. Elespuru*, 73 M.J. 326 (C.A.A.F. 2014). In *Elespuru*, our superior court held that the appellant waived his claim that specifications for abusive sexual contact and wrongful sexual contact were multiplicious. The court nonetheless held that "[t]he Government charged and tried the abusive sexual contact and wrongful sexual contact offenses in the alternative for exigencies of proof, but nonetheless argues on appeal that both convictions should stand. While the Government's charging strategy was appropriate, we disagree that both convictions may stand." *Id.* at 329.
[3] U.S. Const. amend. V.

multiple convictions and punishments are permitted . . . if the two charges each have at least one separate statutory element from each other." *Morita*, 73 M.J. at 564. Where one offense is necessarily included in the other under the separate elements test, legislative intent to permit separate punishments may be expressed in the statute or its legislative history, or "it can also be presumed or inferred based on the elements of the violated statutes and their relationship to each other." *Teters*, 37 M.J. at 376–77.

Even if charged offenses are not multiplicious, courts may apply the doctrine of unreasonable multiplication of charges to dismiss certain charges and specifications. Rule for Courts-Martial 307(c)(4) summarizes this principle as follows: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The principle provides that the government may not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994). Our superior court has endorsed the following non-exhaustive list of factors in determining whether unreasonable multiplication of charges has occurred:

> (1) Did the [appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?
> (2) Is each charge and specification aimed at distinctly separate criminal acts?
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?
> (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338–39 (C.A.A.F. 2001) (citation and internal quotation marks omitted). "[U]nlike multiplicity—where an offense found multiplicious for findings is necessarily multiplicious for sentencing—the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). In a case where the *Quiroz* factors indicate the unreasonable multiplication of charges principles affect sentencing more than findings, "the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings." *Quiroz*, 55 M.J. at 339.

In the present case, Appellant's convictions for involuntary manslaughter and negligent homicide are not multiplicious. In applying the separate elements test to these two offenses, our superior court has concluded, "[N]egligent homicide under Article 134, UCMJ, is not [a lesser included offense] of involuntary manslaughter under Article 119, UCMJ." *United States v. McMurrin*, 70 M.J. 15, 18 (C.A.A.F. 2011). And we ourselves have declared, "[W]e do not find [involuntary manslaughter and negligent homicide]

multiplicious in findings, because each provision requires proof of a fact which the other does not." *United States v. Lovely*, 73 M.J. 658, 678 n.7 (A.F. Ct. Crim. App. 2014) (citing *Blockburger*, 284 U.S. at 304).

Thus, we turn to whether convictions for both involuntary manslaughter and negligent homicide amount to an unreasonable multiplication of charges—and conclude that they do.

In *United States v. Wickware*, ACM 38074 (A.F. Ct. Crim. App. 10 October 2013) (unpub. op.), we confronted a multiplicity and unreasonable multiplication of charges claim based on A1C Wickware's convictions for unpremeditated murder, involuntary manslaughter, and negligent homicide in the death of his infant son. We affirmed and rejected claims of multiplicity and unreasonable multiplication of charges, reasoning that because the military judge merged the offenses for purposes of sentencing, A1C Wickware did not suffer any prejudice. *Id.* unpub. op. at 28. In a summary disposition on appeal, however, our superior court set aside the findings of guilty and dismissed the involuntary manslaughter and negligent homicide offenses. *United States v. Wickware*, 73 M.J. 350 (C.A.A.F. 2014) (mem.).

Similarly, in *United States v. Sauk*, 74 M.J. 594 (A.F. Ct. Crim. App. 2015), we affirmed the finding of guilty for involuntary manslaughter, but set aside and dismissed Technical Sergeant Sauk's convictions for negligent homicide, aggravated assault, and assault in causing the death of his infant son.[4]

Conducting a *Quiroz* analysis in the case at bar, we conclude that involuntary manslaughter and negligent homicide constitute an unreasonable multiplication of charges. We note in particular that the two charges are not aimed at distinctly separate criminal acts but address a single act of Appellant in causing the death of A1C DF. Under the totality of the circumstances, this charging scheme grossly exaggerates Appellant's criminality. Pursuant to our broad Article 66(c), UCMJ, authority, we find that Appellant's conviction for negligent homicide should not be approved.

*Sentence Reassessment*

Having found Appellant's convictions for involuntary manslaughter and negligent homicide constitute an unreasonable multiplication of charges warranting dismissal of the latter charge, we must consider whether we can reassess the sentence or whether this case

---

[4] In reaching the decisions in *Sauk* and *Wickware*, both we and our superior court, respectively, found that the offenses at issue had been charged in the alternative. *United States v. Sauk*, 74 M.J. 594, 601 (A.F. Ct. Crim. App. 2015); *United States v. Wickware*, 73 M.J. 350 (C.A.A.F. 2014) (mem.). The Government appears to have engaged in alternate charging in the present case as well. For, in examining the record in its entirety, we conceive no other legitimate purpose for charging Appellant with two homicides in the same death.

should be returned for a sentence rehearing. We are confident we can accurately reassess Appellant's sentence.

This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *United States v. Sales*, 22 M.J. 305, 308 (C.A.A.F. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

In the present case, dismissing the conviction for negligent homicide reduces the maximum length of confinement from 15 years and 6 months to 12 years and 6 months.[5] There is no dramatic change to the maximum penalty landscape and, in light of the 24-month confinement limit in the pretrial agreement, there is no difference in the actual penalty exposure. The remaining offenses—drunken operation of a vehicle resulting in personal injury, involuntary manslaughter, and reckless endangerment—capture the gravamen of the criminal conduct. The forum was military judge alone and thus we are "more likely to be certain of what a military judge would have done." *Id.* at 16. This court has experience and familiarity with determining fair and appropriate sentences for this type of offense. We are confident that, absent the conviction for negligent homicide, the military judge would have imposed the same sentence. Having so found, we reassess Appellant's sentence to the same sentence that was approved by the convening authority: a bad-conduct discharge, confinement for 24 months, and reduction to E-1.

*Conclusion*

The findings of guilty as to the Additional Charge and its Specification are set aside and dismissed. The remaining findings, and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

---

[5] The military judge considered the offenses "as one offense for sentencing purposes" and calculated the maximum punishment to be "12 years and six months of confinement."

Accordingly, the findings, as modified, and sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court

ACM 38664 (recon)