# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39847**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Andrew P. ROGERS**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 June 2021

———————————

*Military Judge:* Willie J. Babor.

*Sentence:* Sentence adjudged on 26 September 2019[1] by GCM convened at Ramstein Air Base, Germany. Sentence entered by military judge on 6 December 2019: Dishonorable discharge, confinement for 5 years, and reduction to E-1.

*For Appellant:* Lieutenant Colonel Garrett M. Condon, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Dayle P. Percle, USAF; Mary Ellen Payne, Esquire; Deniz Gunaydin (legal intern).[2]

Before JOHNSON, LEWIS, and CADOTTE, *Appellate Military Judges*.

Senior Judge LEWIS delivered the opinion of the court, in which Chief Judge JOHNSON and Judge CADOTTE joined.

———————————

---

[1] The record of trial cover sheets incorrectly list the end date of the court-martial as 27 September 2019. The cover sheets also omit the date of the first session of the court-martial—Appellant's arraignment—which was held on 2 July 2019.

[2] Mr. Gunaydin was supervised by attorneys admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————————

LEWIS, Senior Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, pursuant to his pleas, of six specifications of indecent recording of the private area of another person, in violation of Article 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920c.[3] Contrary to his pleas, Appellant was convicted of an additional specification of indecent recording of the private area of another person, in violation of Article 120c, UCMJ.[4] The military judge sentenced Appellant to a dishonorable discharge, confinement for five years, and reduction to the grade of E-1.

On 1 October 2019, the military judge signed a corrected Statement of Trial Results.[5] On 25 October 2019, the convening authority took no action on the findings and sentence.[6] The military judge signed the entry of judgment on 6 December 2019.

———————————————

[3] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial*, *United States* (2019 ed.).

[4] Appellant pleaded not guilty to three additional specifications. The military judge entered a finding of not guilty pursuant to a R.C.M. 917 motion on one specification of indecent exposure, an alleged violation of Article 120c, UCMJ. Additionally, the military judge acquitted Appellant of two specifications of indecently recording the private area of another.

[5] It is unclear what day the military judge signed the original Statement of Trial Results. Regardless, the corrected version failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has not claimed prejudice, and we find none. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).

[6] According to *United States v. Brubaker-Escobar*, ___ M.J. ___, No. 20–0345, 2021 CAAF LEXIS 508 (C.A.A.F. 4 Jun. 2021), the convening authority was not required to take action on the sentence as there was no initiation of criminal action against Appellant prior to 1 January 2019. *Cf.* Exec. Order. 13,825 § 6(b), 83 Fed. Reg. 9889, 9890 (1 Mar. 2018); National Defense Authorization Act for Fiscal Year 2017 (FY17 NDAA), Pub. L. No. 114-328, § 5542(c)(1), as amended by FY18 NDAA, Pub. L. No. 115-91, § 531(n)(1) (12 Dec. 2017). In this case, the convicted offenses were committed between 1 November 2015 and 30 April 2018. The charge and specifications were preferred on 7 March 2019 and referred to trial by general court-martial on 14 April 2019.

Appellant personally requests we consider the issue of whether his sentence is inappropriately severe pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.[7]

## I. BACKGROUND

In April 2018, Appellant took leave from his duty station at Ramstein Air Base, Germany, to another country. Appellant requested that his close friend, Ms. JB, watch his off-base house and feed his fish. At the time, Ms. JB was a United States Army employee. Appellant encouraged Ms. JB to use the bathtub on the second floor of his house and to use his bath supplies during her stay. This bathtub also had a shower feature which Appellant told Ms. JB to use. Appellant instructed Ms. JB that the other shower in his house was leaking.

The first night that Ms. JB stayed at Appellant's house, she was accompanied by her sister-in-law Ms. AB. Both of them used Appellant's bathtub and slept in an upstairs bedroom. Ms. JB stayed at Appellant's house by herself for a few additional days. One morning, Ms. JB was showering while standing up in the bathtub when she realized that a "smoke detector"—installed at eye level and facing her—was flashing. Ms. JB suspected the device was a video camera. Ms. JB took the device off the wall and confirmed that it contained a camera and had an SD card installed which could save recordings. Ms. JB also thought the device had live streaming capabilities and was motion activated so she replaced it on the wall so Appellant would not realize that she had found it.

Ms. JB went to work that morning but during the morning she was able to research smoke detector spy cameras on the Internet and discovered how they worked. During her lunch hour Ms. JB returned to Appellant's house where she shut off Appellant's Wi-Fi and retrieved the device from the bathroom. As Ms. JB drove back to work, Appellant messaged her and asked if everything was okay with the Wi-Fi in his house. Appellant also told Ms. JB that she could tell him anything even if she thought he was going to "freak out or be hurt." Ms. JB did not respond to Appellant's messages.

---

[7] The record of trial indicates that Prosecution Exhibit 1 for identification, marked "Selected Videos," was admitted into evidence. It was not. The Government offered the exhibit but the military judge sustained several of trial defense counsel's objections to it. After lengthy discussions on the record, the Government proceeded by offering a different exhibit, Prosecution Exhibit 10, which was admitted without objection. We did not consider Prosecution Exhibit 1 for identification in performing our duties under Article 66(d), UCMJ, 10 U.S.C. § 866(d).

Ms. JB also notified Ms. AB, and later in the day the two women returned to the house to search for additional hidden recording devices. They found an alarm clock in the upstairs guest bedroom with a hidden camera and an installed SD card. Ms. JB did not have a device which could view the contents of the two SD cards, so she asked a male friend for assistance. He was able to access the files on the SD cards so Ms. JB and Ms. AB could view them.

When Ms. JB looked at the first file on the SD card from the "smoke detector" she saw a video of Appellant setting it up. Ms. JB and Ms. AB then reviewed other files on the SD cards and confirmed that their naked and underwear-clad private areas had been recorded without their consent in the bathroom and guest bedroom. As Ms. JB viewed the videos, it occurred to her that Appellant probably had not installed the cameras solely to record her while she housesat for him, but rather had also recorded other women. The two women notified the Air Force Office of Special Investigations (AFOSI) of what Appellant had done and turned over the two devices and the SD cards.

As Ms. JB possessed the keys to Appellant's house, she consented to AFOSI's search of the house for additional recording devices. AFOSI seized a second alarm clock with a hidden camera that was in another bathroom. In a drawer in Appellant's bedroom, agents also seized a second camera disguised as a smoke detector. From this same drawer, the agents collected numerous memory cards of varying types and sizes. The agents also photographed the real smoke detectors for the house and seized a tower computer from the bedroom.

When Appellant returned to Germany from his leave, AFOSI agents met him at his house. Appellant consented to a search of the electronic devices he was carrying, including a laptop computer and a cellphone. In a subsequent interview with AFOSI agents, Appellant waived his right to remain silent and his right to counsel and agreed to answer questions. Appellant cooperated with the agents and admitted that he had recorded the private areas of Ms. JB and Ms. AB without their consent.

During the interview, the agents asked Appellant if he had recorded others in a similar way. Appellant provided the names of his civilian ex-wife and two female enlisted Air Force members.[8] Digital analysis of Appellant's computers, cell phone, and memory cards showed that he recorded the private areas of Ms. JB, Ms. AB, his ex-wife, and four female enlisted Air Force members.

About a week after this interview, Appellant's ex-wife emailed him about an unrelated financial issue. In an email response, Appellant explained to his

---

[8] Appellant named two additional civilian women during this interview but he was not charged with indecently recording them.

ex-wife that he was under investigation because he "did some really, really f***ed up stuff." He notified her that AFOSI would contact her and that he was "very sorry for the person [he] had been" and that she "might not want to talk to [him] anymore." Appellant explained that he would be "properly punished" and that she and "anyone else that has ill feelings towards [him] will be satisfied when the verdict is out." Appellant did not specify in the email that he had recorded his ex-wife while she used the bathroom when she lived with him in Germany.

During the investigation, AFOSI agents notified Appellant's ex-wife and the four female enlisted members that Appellant had recorded their private areas. None of the women consented to the recordings or knew that Appellant had recorded them. One of the female enlisted members was deployed when AFOSI notified her.

At trial Appellant pleaded guilty to the indecent recording of six women: Ms. JB, Ms. AB, and four female enlisted members. He recorded five of the women on multiple occasions. Initially, Appellant entered a plea of guilty to indecent recording of his ex-wife but he later withdrew that plea when the military judge found it was not provident. After hearing the evidence, the military judge found Appellant guilty as charged of indecent recording of his ex-wife.

During the trial, AFOSI agents and a digital forensic expert testified about how Appellant recorded the women. This testimony included that Appellant had installed an application on his cellphone that permitted him to watch a live feed from some of the devices and take screenshots. Specifically, screenshots of Ms. JB and Ms. AB bathing were saved on his phone.

Appellant's electronic devices had 1,500 separate recordings of one female enlisted member who had lived in Appellant's upstairs bedroom for two months. Some of these recordings were not indecent but others depicted the private areas—either naked or underwear-clad—of this woman while she was in the guest bedroom or when she showered, bathed, or used the toilet. Appellant admitted during his providence inquiry that recording her "became a very unhealthy obsession and one of the few sources of sexual gratification that [he] had at the time."

Appellant recorded another female enlisted member while they had sexual intercourse and while he performed other sexual acts upon her. To make these recordings, Appellant used the camera on his laptop computer and installed recording software. To justify to her why his laptop was necessary during their sexual encounter, Appellant played a "how-to" pornographic video on it.

Appellant did not review all of the recordings that the hidden cameras captured. But he reviewed some of them and he specifically saved more than ten

of them in a specific folder. There was no evidence that Appellant shared the recordings with anyone.

During sentencing, six of the seven women provided sworn testimony in aggravation, and explained the impact of Appellant's offenses on them. The seventh woman provided a written unsworn victim statement as did five of the women who provided sworn testimony. Several of the women read their unsworn statements to the military judge. This opinion will not attempt to explain all of the social and psychological impacts of Appellant's crimes. However, we will note that several victims reported: (1) having nightmares and trouble sleeping; (2) feeling the need to check rooms for hidden cameras; (3) a negative impact to their relationships and families; (4) an inability to trust others, particularly males; and (5) a feeling that they were naïve in trusting Appellant. Some of the women felt angry, embarrassed, betrayed, disrespected, and humiliated. All of the enlisted women had served less time in the Air Force than Appellant and had met him when he was a staff sergeant. Two of the enlisted women held the rank of Airman First Class (E-3) when they met Appellant.

In the Defense's sentencing case, three Air Force members testified for Appellant. Their testimony covered his excellent on-duty performance, his positive contributions to the mission, and his remorse for his crimes. Appellant's father, a retired Air Force member, also testified and described positive points in Appellant's upbringing and his support to their family. Several character statements were admitted as defense exhibits which addressed Appellant's positive character and duty performance. Appellant provided oral and written unsworn statements. Most notably, he apologized to the victims and their families for the pain and anguish he caused, and for violating their trust and privacy. He acknowledged the deep and lasting effects that they felt. He admitted his criminal acts were horrible and disgusting.

Before us, Appellant argues that his sentence is inappropriately severe. He cites his 14 years of service and two overseas assignments, as well as his cooperation with the AFOSI investigation and his guilty plea without the benefit of a pretrial agreement. Appellant requests we reduce his confinement sentence after we reflect on our knowledge of other sexual misconduct cases and the significant extenuation and mitigation evidence he presented. The Government requests we affirm the adjudged sentence in light of the offenses, the evidence in aggravation, and the unsworn victim impact statements.

## II. DISCUSSION

### A. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### B. Analysis

The maximum punishment that Appellant faced was a dishonorable discharge, confinement for 35 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. During sentencing argument, the trial counsel suggested an appropriate sentence would include a dishonorable discharge, confinement for six years, forfeitures of all pay and allowances and reduction to the grade of E-1. Trial defense counsel argued the military judge should sentence Appellant based on the whole person concept and that the Government's confinement recommendation was a "haphazardly chosen number" that was not justified. The Defense appropriately argued the evidence in extenuation and mitigation, including his plea of guilty and his cooperation during the investigation. The Defense also noted that Appellant had been integrated in society without issue since his offenses were discovered in April 2018. The Defense did not suggest a specific sentence. The military judge determined an appropriate sentence was a dishonorable discharge, five years of confinement, and reduction to the grade of E-1.

Appellant's offenses were serious and committed over more than a two-year period in his off-base house. Initially, Appellant positioned only one alarm clock in the bathroom with a hidden camera and an SD card. Over time, Appellant added three additional devices and Wi-Fi capability, so he could live stream the video feed from his bathroom and guest bedroom and take screenshots that could be saved on his phone. These were the features he used when he live streamed, recorded, and took screen shots of Ms. JB and Ms. AB while they were using his bathtub. Appellant manipulated several women to use this particular bathtub in order to improve his chances of recording them undressing and bathing. He victimized women who trusted him, confided in him, and

did favors for him by watching his house or his pets. Several of the women were not only fellow Airmen, but co-workers. Appellant also used his laptop to indecently record one Airman having sexual intercourse and engaging in other sexual acts with him. The victim impact evidence in this case and the unsworn statements of the victims were powerful. Additionally, one victim submitted a written statement to the convening authority pursuant to R.C.M. 1106A during the clemency process. In it, she requested that Appellant's adjudged sentence remain intact and for the convening authority to realize that her life, and the lives of the other victims, will never be the same.

We have considered the nature and seriousness of the offenses and the victim impact evidence from the seven named victims. We have given individualized consideration to Appellant and his positive, although not unblemished, service to the Air Force including his two overseas assignments. After careful consideration of the above and the matters contained in the record of trial, we conclude the sentence is not inappropriately severe.

## III. Conclusion

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court