# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32665**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Gage E. FULPS**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 December 2021

————————————

*Military Judge:* Wesley A. Braun.

*Sentence:* Sentence adjudged 27 May 2020 by SpCM convened at Scott Air Force Base, Illinois. Sentence entered by military judge on 23 June 2020: Bad-conduct discharge, confinement for 15 days, and reduction to E-1.

*For Appellant:* Major Alexander A. Navarro, USAF.

*For Appellee:* Lieutenant Colonel Amanda L.K. Linares, USAF; Lieutenant Colonel Matthew J. Neil; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MERRIAM, *Appellate Military Judges.*

Judge MERRIAM delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MERRIAM, Judge:

A special court-martial composed of a military judge alone found Appellant guilty, in accordance with his pleas and pursuant to a plea agreement, of two

specifications of assaulting a person in the execution of civilian law enforcement duties, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 15 days,[3] and reduction to the grade of E-1.

On appeal, Appellant asserts one assignment of error: that his sentence to a bad-conduct discharge was inappropriately severe "in light of the victim requesting leniency for the Appellant in his post-trial submission." Finding no prejudicial error, we affirm.

## I. BACKGROUND

Appellant entered active duty in the United States Air Force in April 2017. On or about 2 June 2019, while on leave in Austin, Texas, Appellant visited a bar in a popular nightlife district and became intoxicated. After Appellant attempted to provoke physical altercations with bar patrons, bar staff asked Appellant to leave. Appellant became belligerent with bar staff, who then forcibly escorted him from the bar and called civilian law enforcement to assist. When officers of the Austin Police Department (APD) responded to the scene, they encountered Appellant being held on the ground just outside the bar by bar staff. When the police officers ordered Appellant to stand up, he initially acted unresponsive. The police officers then picked up Appellant by his arms and placed him on a bench on the crowded sidewalk in front of the bar. As numerous onlookers watched, Sergeant KB and Officer JR of the APD stood by the bench on which Appellant was seated. Officer JR asked Appellant whether he had a phone to call someone to pick him up. Appellant stood up, appeared to check his pockets for a phone, then bent down and acted as though about to vomit. Appellant then shouted, "shut the [expletive] up!" at the officers and suddenly "shot upwards," throwing both of his arms toward the officers with

---

[1] All references in this opinion to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Pursuant to the plea agreement, Charge I and its Specification, which alleged a violation of Article 107, UCMJ, 10 U.S.C. § 907, for Appellant falsely stating to civilian law enforcement personnel that he was an Air Force captain, were withdrawn and dismissed with prejudice.

[3] Under the plea agreement, confinement for each specification was capped at 30 days, with no further limitation that the sentences were required to run concurrently. The military judge sentenced Appellant as follows: for Specification 1 of Charge II (striking Officer JR), to be confined for 15 days; for Specification 2 of Charge II (attempting to strike Sergeant KB), to be confined for 10 days. The military judge ordered the sentences of confinement to run concurrently.

his hands in fists. One of Appellant's fists struck Officer JR's jaw; Sergeant KB successfully dodged Appellant's other fist. The officers then forced Appellant to the ground, where they were required to use two sets of handcuffs to detain Appellant due to his level of resistance. Ultimately, at least five civilian police officers and an emergency medical technician responded to the scene due to Appellant's conduct. At Appellant's court-martial, video and audio recordings of the incident from cameras worn by the police officers were entered into evidence.

After the sentence was adjudged, Appellant did not submit a request for clemency to the convening authority. Though neither Sergeant KB nor Officer JR testified at trial, after trial, Sergeant KB submitted a letter to the convening authority pursuant to R.C.M. 1106A. In his letter, Sergeant KB, a military veteran, noted that military members sometimes "get intoxicated and do things that they regret." Sergeant KB further opined:

> I understand that punishment is required for the acts committed and spoken of. However, I don't think [Appellant] should be kicked out of the military or at least not have a dishonorable discharge because of his actions. I was not the one that was struck with a punch but I understand people do things in their intoxicated state that they wouldn't normally do. . . . I don't know if my opinion helps but I wouldn't want [ ] this to damage a [servicemember's] career/life.

In his Decision on Action memorandum, the convening authority stated that he considered Sergeant KB's submission and that the other victim, Officer JR, did not submit any matters. The convening authority took no action on findings or sentence and the military judge subsequently entered the sentence as adjudged.

## II. DISCUSSION

### A. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)).

Our authority to determine sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). Although we have great discretion to determine whether a sentence is appropriate, and Article 66, UCMJ, empowers us to do justice, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Under R.C.M. 1106(c)(1), a convening authority may provide relief related to an adjudged bad-conduct discharge only in limited circumstances. If an accused provides substantial assistance in the investigation or prosecution of another person, a convening authority may, upon recommendation of trial counsel, reduce, commute, or suspend an adjudged bad-conduct discharge. R.C.M. 1109(c)(1) and (e). A convening authority may also suspend a bad-conduct discharge upon recommendation by the military judge. R.C.M. 1109(c)(1) and (f).

**B. Analysis**

Appellant's assignment of error specifically asserts the bad-conduct discharge is inappropriately severe "in light of the victim [requesting] leniency for the Appellant in his post-trial submission." Appellant did not offer evidence from either victim at trial. After trial, Appellant did not request clemency. However, Sergeant KB submitted a letter to the convening authority under R.C.M. 1106A, opining that Appellant should not be "kicked out of the military . . . ." R.C.M. 1109(c)(1) prohibited the convening authority from reducing the punitive discharge—the sentence modification Appellant seeks.

Citing only an unpublished opinion of a panel of the Army Court of Criminal Appeals, *United States v. Alcantara*, No. A20170370, 2018 CCA LEXIS 601, at *6–7 (A. Ct. Crim. App. 31 Oct. 2018) (unpub. op.), Appellant argues we should exercise our Article 66(d), UCMJ, responsibility and reduce Appellant's sentence based on Sergeant KB's post-trial submission. While our review for sentence appropriateness encompasses the entire record, including post-trial matters submitted by victims and appellants, several facts distinguish the facts of this case from the non-controlling case cited by Appellant. In *Alcantara*, the staff judge advocate and the convening authority expressed in writing that they believed the adjudged sentence was too harsh. *Id.* at *2. In this case, neither the staff judge advocate nor, more importantly, the convening authority, has conveyed such a sentiment. In fact, the convening authority in this case could have modified other portions of the sentence—the confinement and/or reduction in grade—and chose not to. Moreover, in *Alcantara*, the "victim of appellant's *most serious* sexual offense" submitted a letter in which she expressed shock at his sentence. *Id.* at *1–2 (emphasis added). In this case, only

the victim of Appellant's *less* serious of two offenses requested leniency.[4] Finally, in *Alcantara*, more than 50 letters were submitted to the convening authority supporting clemency for the accused. *Id.* at *6. Here, Appellant did not request clemency and only one person submitted anything to the convening authority for post-trial consideration.

We accord great respect to Sergeant KB who, despite being victimized by Appellant, possessed the equanimity to write on Appellant's behalf. However, considering the entire record, and mindful that though Article 66, UCMJ, empowers us to do justice, we have no authority to grant mercy, *Nerad*, 69 M.J. at 146, we are not persuaded that Sergeant KB's post-trial request for leniency renders Appellant's sentence for publicly assaulting two police officers inappropriately severe.

Although Appellant's assignment of error specifically asserts that the bad-conduct discharge is inappropriately severe due to Sergeant KB's post-trial letter suggesting leniency, Appellant's brief in support of his assignment of error further argues that Appellant's punitive discharge should be set aside "in light of . . . the other matters in extenuation and mitigation in this case." We turn briefly to this contention.

Appellant asserts he was a "model [A]irman, as evidenced by the several witnesses who testified on his behalf." Indeed, four non-commissioned officers testified on Appellant's behalf at trial. Appellant further notes that he was only 21 years old when he committed the offenses and that he took responsibility by pleading guilty. Appellant contends that his "overwhelming[ ] intoxication," the fact that the police officers were able to "quickly and effectively detain" him, and the police officers' lack of lasting injuries are also matters in mitigation. We note all this evidence was available to the military judge who adjudged the sentence.

We decline Appellant's request to set aside the bad-conduct discharge or otherwise modify the adjudged sentence. Appellant was sentenced for public assaults on multiple uniformed civilian law enforcement personnel while they were in the exercise of their duties. Based on our careful, individual, and particularized review of Appellant, the nature and seriousness of his offenses, his acceptance of responsibility, his relatively brief but strong record of service,

---

[4] Appellant was convicted of assaulting two police officers as they were discharging their duties. Appellant's repeated characterization of Sergeant KB's letter, including in the assignment of error, as a request for leniency from "*the* victim" (emphasis added) is thus somewhat misleading. More accurately, *one of* the two victims suggested leniency. Importantly, the victim suggesting leniency was not the officer whom Appellant punched in the face.

and all matters contained in the record, including the letter submitted by Sergeant KB under R.C.M. 1106A, we find the sentence was not inappropriately severe.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court