# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40403**

————————————

## UNITED STATES
*Appellee*

**v.**

## Robert D. SCHNEIDER
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 July 2024

————————————

*Military Judge*: Elijah F. Brown.

*Sentence*: Sentence adjudged 27 October 2022 by GCM convened at Hill Air Force Base, Utah. Sentence entered by military judge on 3 January 2023: Bad-conduct discharge, confinement for 12 months, reduction to E-1, and a reprimand.

*For Appellant*: Major Jenna M. Arroyo, USAF; Captain Michael J. Bruzik, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Major Olivia B. Hoff, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, GRUEN, and WARREN, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge GRUEN and Judge WARREN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone found Appellant guilty, in accordance with his pleas pursuant to a plea agreement, of eight specifications of making false official statements in violation of Article 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 907.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 12 months, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or sentence.

Appellant raises four issues on appeal, which we have partly rephrased: (1) whether the military judge erred by considering impermissible matters included in victim impact statements; (2) whether the sentence is inappropriately severe; (3) whether illegible portions of the record of trial require sentencing relief or remand for correction; and (4) whether the Government can prove the 18 U.S.C. § 922 firearms prohibition is constitutional as applied to Appellant and whether this court has jurisdiction to decide that issue. In addition, although not raised by the parties, we address certain errors in the post-trial processing of Appellant's court-martial.

We have carefully considered issue (4) and conclude it warrants neither discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987); *United States v. Vanzant*, ___ M.J. ___, No. ACM 22004, 2024 CCA LEXIS 215, at *23–25 (A.F. Ct. Crim. App. 28 May 2024) (holding the 18 U.S.C. § 922 firearm prohibition notation included in the staff judge advocate's indorsement to the entry of judgment is beyond a Court of Criminal Appeals' statutory authority to review). As to the remaining assignments of error, we find no error that materially prejudiced Appellant's substantial rights. However, as explained below, we do find an error in the entry of judgment that warrants correction, and we take corrective action in our decretal paragraph.

## I. BACKGROUND[2]

In July 2017, Appellant was assigned to a recruiting squadron focusing on recruiting health care professionals to the Air Force and was stationed in Nebraska. Beginning in January 2019, Appellant "was issued a series of [three] Letters of Reprimand [LORs] for willfully lying to applicants about the status of their applications, inputting false information into the Air Force Recruiting Information Support System [(AFRISS)] . . . , and failing to make reports

---

[1] Unless otherwise indicated, all references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The information in this section is drawn primarily from the stipulation of fact, and quotations are from the stipulation.

altogether, in violation of standing and direct orders." In conjunction with the third of these LORs, in December 2019 Appellant's commander informed Appellant he was "to no longer perform recruiting duties;" in addition, Appellant's flight chief told Appellant he was "not to have any further contact with any applicants."

In spite of these directions, Appellant "continued to communicate with applicants" and "proceeded to tell several applicants that they had been admitted into the Air Force, when in fact they had not." Appellant was subsequently charged for false statements he made to eight applicants after December 2019.

EH initially came into contact with Appellant in April 2018 and provided Appellant numerous documents related to his application to join the Air Force. Beginning in October 2019, Appellant told EH he was scheduled for a series of interviews and appointments; in each case Appellant subsequently told EH the interviews or appointments were cancelled for one reason or another. In October 2020, Appellant sent EH a text message informing EH he had been admitted to the Air Force. In January 2021, Appellant met EH in person in order for EH to sign papers "pertaining to the health profession and loan repayment;" Appellant then "took [EH] on base to purchase uniforms." In reality, Appellant had input almost no information about EH into AFRISS and had not submitted an application on behalf of EH. Appellant's actions with EH came to light in February 2021 after EH contacted Officer Training School (OTS) in Montgomery, Alabama, in anticipation of attending training. Appellant was subsequently charged with making a false official statement to EH in October 2020 that EH was selected to attend OTS.

Appellant initially made contact with IB in December 2019 after IB used the Air Force recruiting website. Appellant told IB multiple times that IB would be commissioned into the Air Force, culminating in October 2020 when Appellant falsely told IB he had been selected for OTS and would be stationed at Scott Air Force Base (AFB), Illinois. Appellant told IB he could sell his current house and look for a house near Scott AFB, which IB proceeded to do. IB and his wife had sold their house, paid earnest money on a new house in Saint Louis, Missouri, and were on their way to OTS in Alabama when they learned IB had in fact not been selected to attend OTS.[3] Appellant was charged with making a false official statement to IB in October 2020 that IB was selected to attend OTS.

---

[3] When Appellant initially made contact with IB, IB was an enlisted member of the Air National Guard. By the time of Appellant's court-martial, IB had been commissioned as an Air Force officer.

Appellant contacted JD on a regular basis beginning in early 2020. In February 2021, Appellant falsely told JD that he had been selected to attend OTS later that month. Appellant directed JD to stop by Omaha, Nebraska, on his way to Alabama in order to receive a copy of his orders in person. After JD arrived in Omaha, he was contacted by Appellant's commander and flight chief who informed JD that he had not been selected for OTS, and in fact Appellant had never submitted JD's application or other paperwork.[4] Appellant was charged with making a false official statement to JD in February 2021 that JD was selected to attend OTS.

Appellant initially contacted JH in December 2019. JH worked with Appellant to apply to be an officer and health professional in the Air Force, including providing medical records and other documents related to obtaining a waiver for a medical issue. In December 2020, Appellant falsely told JH he had been selected to attend OTS. When Appellant subsequently stopped responding to JH, JH contacted the recruiting office and learned he had not been selected for OTS and Appellant had never submitted JH's application or waiver. Appellant was charged with making a false official statement to JH in December 2020 that JH had been selected to attend OTS.

Appellant initially contacted AC in late 2018 or early 2019. Through Appellant, AC attempted to apply for the Health Professions Scholarship Program. In January 2021, Appellant falsely told AC she was selected as an alternate to attend OTS.[5] In fact, Appellant never submitted AC's application and she was never selected as an alternate. Appellant was charged with making a false official statement to AC in January 2021 that AC had been selected as an alternate to attend OTS.

Appellant began communicating with SN in March 2018. In April or May 2020, Appellant falsely told SN she had been selected as an alternate for OTS. When SN received no further information from Appellant, she contacted him again in October 2020 when he told her "she was no longer needed." SN later learned Appellant had never submitted her application to the Air Force. Appellant was charged with making a false official statement to SN in April or May 2020 that SN had been selected as an alternate to attend OTS.

---

[4] By the time of Appellant's court-martial, JD had been commissioned as an Air Force officer.

[5] At one point the stipulation of fact states Appellant told AC this in January 2020. Neither the parties nor military judge commented on this apparent discrepancy. However, in the context of the entire stipulation of fact and Appellant's statements during the military judge's guilty plea inquiry it is clear this is a typographical error, and this statement by Appellant in fact occurred in January 2021.

Appellant began communicating with MM between August and October 2019. In January or February 2021, Appellant falsely told MM she had been selected as an alternate to attend OTS and he had scheduled her for a Military Entrance Processing Station (MEPS) appointment, which he subsequently claimed was cancelled. In fact, Appellant never submitted MM's application and she had not been selected as an alternate to attend OTS. Appellant was charged with making a false official statement to MM in January or February 2021 that MM had been selected as an alternate to attend OTS.

Appellant initially made contact with MJ in early 2020. In February 2020, MJ began sending Appellant various transcripts and other documents. In January 2021, Appellant told MJ that he had a MEPS appointment for a physical at a facility that was an approximately four hour and forty-five minute drive from MJ's residence. Approximately one hour after MJ began the drive, Appellant sent him a message stating the appointment needed to be rescheduled. In reality, Appellant never submitted any documents to the Air Force on behalf of MJ and there never had been a MEPS appointment. Appellant was charged with making a false official statement to MJ in January 2021 that MJ had a MEPS appointment and the appointment was cancelled, or words to that effect.

When Appellant was interviewed by security forces in April 2021, he acknowledged lying to and misleading applicants and stated he felt "disgusted" by his actions. Appellant was subsequently diagnosed "with severe alcohol abuse disorder and adjustment disorder with mixed anxiety and depressed mood."

## II. DISCUSSION

### A. Victim Impact Statements

#### 1. Additional Background

During presentencing proceedings, the Government called EH, IB, IB's spouse EB, JD, SN, and MJ to testify as witnesses. After the Government rested, seven of the named victims (EH, IB, JD, AC, SN, MM, and MJ) offered written unsworn statements pursuant to Rule for Courts-Martial (R.C.M.) 1001(c). Four of the named victims (EH, IB, JD, and SN) also provided oral unsworn statements, reading their written statements to the military judge. Appellant asserts the military judge erroneously allowed portions of four of the unsworn statements.

##### a. EH's Statement

The Defense objected to two portions of EH's statement. The first objection related to a paragraph describing the "significant financial impact" Appellant's conduct had on EH's life. EH described how, *inter alia*, he was required to

travel to Offutt AFB, Nebraska, multiple times at his own expense; purchased uniforms and other items relating to attending OTS; "sacrificed [his] position in a loan repayment program, giving up a $62,500 reimbursement" when he left his existing employment in anticipation of joining the Air Force; and went without employment for 15 weeks, losing "over $20,000" in wages. In addition, when EH resumed civilian employment he was "unable to maintain [his] previous salary" and had moved to a location with increased living expenses. The paragraph concluded, "While all calculations cannot be exactly monetized due to the length of time our communication has spanned, my financial loss due to [Appellant's] actions [is] in excess of 100 thousand dollars." The Defense, citing Mil. R. Evid. 403, objected specifically to this final sentence, describing it as a "conclusionary remark" not based on "detailed financial accounting" which was "not exceedingly probative" but "very prejudicial." The military judge overruled the objection, stating, "[b]ecause of the prefatory clause there that indicates that calculations can't be exactly monetized[,] I view this as an estimation by [EH] and will give it an appropriate weight as a result."

The Defense's second objection was to a sentence in a paragraph of EH's statement describing the "mental and psychological" and "emotional" impact of Appellant's conduct. Trial defense counsel objected specifically to the following sentence: "However, after enduring continual changes with information and schedules the relationship [with EH's romantic partner] ultimately ended due to her interpretation of [EH's] character throughout this process and the inability to marry into an erratic life." Trial defense counsel characterized this purported impact as "incredibly speculative," "incredibly attenuated," and not "directly related to or resulting from" Appellant's conduct. Trial defense counsel also cited Mil. R. Evid. 403, contending the statement was "prejudicial" and not "probative." The military judge overruled the objection, explaining:

> I think this is essentially [EH] expressing an opinion as to a factor that caused his relationship to come to an end. . . . I think I can give that the appropriate weight. It is what this witness believes contributed to the loss of that relationship, which is something that he believes was directly related to this particular offense.

### b. IB's Statement

The Defense objected to two portions of IB's unsworn statement. First, trial defense counsel objected to the following:

> Within a week of [my wife and I] finding out about [Appellant's] scheme, we were notified that our identities were stolen. To this day, we do not know if he was in on it. For months after we found out, my wife asked if we were safe. Honestly, I didn't have a

truthful answer. I had no idea of his freedom to roam or the extent of his connections.

Trial defense counsel argued this portion of the statement was speculative and did not reflect impact directly related to or resulting from Appellant's offense. The military judge overruled the objection, explaining:

I understand your objection, [d]efense counsel, and I also understand there has been no evidence provided to this court that [Appellant] had anything to do with [IB's] identity being stolen. Whoever stole his identity though is different from, the sort of fear or wondering or concern that this victim has expressed.

So, I don't read this as asserting, that [Appellant] was in anyway responsible. Instead, I view it as, this particular victim saying that, in light of the particular offense, and then this other thing happening to him--his identity being stolen--it just made him wonder if it could have been related.

And so, it's really the impact, I think, of feeling betrayed or feeling that he's been lied to, so he wonders, well, if this person lied to me about this, what else could they have done. So, I see that there is a distinction there. I certainly am not going to read this as, asserting that [Appellant] actually did anything of the sort and considering the [Mil. R. Evid.] 403-balancing test, I find that I can make that distinction appropriately and so, the--any danger of unfair prejudice, doesn't substantially outweigh the probative value of the evidence.

Trial defense counsel also objected to the following passage about IB's reluctance to seek counseling to cope with the impact of Appellant's offense:

There remains a stigma about seeking help for this sort of thing in the military. Even if I could without fear, I would not go to a uniformed counselor. Private counseling is something I would be open to receiving, but at this time, I do not want to dig an unwanted challenge or accumulate any more expenses over this trial.

Trial defense counsel objected on the basis that whether there is a stigma or the perception of a stigma in the military for receiving counsel was not "fairly attributable" to Appellant's actions. The military judge overruled the objection, explaining that he viewed this passage as IB explaining how he might "deal with the consequences of this offense," and not attributing the possible existence of a stigma to Appellant.

### c. SN's Statement and MJ's Statement

SN's unsworn statement included the following: "Allowing [Appellant] to continue to serve in any capacity or receive any benefits provided from the Air Force is an insult to those who genuinely serve or have served our country." Trial defense counsel did not object to this portion of SN's statement. Trial defense counsel did object to another portion of SN's unsworn statement, and the military judge sustained that objection. After the military judge ruled on that objection, he asked the Defense whether there were "any additional objections" to the statement. Trial defense counsel responded, "No, Your Honor."

MJ's unsworn statement included the following: "It sickens me that this individual has also been getting paid at a [technical sergeant] pay level since he was found out, being allowed to collect his pay and allowances. Because of all this[,] a lesser punishment would not be appropriate." Trial defense counsel did not object to this portion of MJ's statement. Trial defense counsel did object to an earlier portion of the statement wherein MJ asserted Appellant "should get the maximum penalty allowed;" the military judge sustained that objection. The military judge then asked whether the Defense had "any additional objections" to MJ's unsworn statement. Trial defense counsel responded, "No, Your Honor."

### 2. Law

We review a military judge's decision to accept a victim impact statement offered pursuant to R.C.M. 1001(c) for an abuse of discretion. *See United States v. Edwards*, 82 M.J. 239, 243 (C.A.A.F. 2022). "A military judge abuses his discretion when his legal findings are erroneous, or when he makes a clearly erroneous finding of fact." *Id.* (citing *United States v. Eugene*, 78 M.J. 132, 134 (C.A.A.F. 2018); *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018)).

R.C.M. 1001(c) provides that during presentencing proceedings, the victim of a non-capital offense of which the accused has been found guilty has the right to make a sworn statement, an unsworn statement, or both. *See also* 10 U.S.C. § 806b(a)(4)(B) (stating the victim of an offense under the UCMJ has a right to be reasonably heard at a court-martial sentencing hearing). Such statements "may only include victim impact and matters in mitigation;" they "may not include a recommendation of a specific sentence." R.C.M. 1001(c)(3). For purposes of the rule, "victim impact includes any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001 (c)(2)(B).

We "consider[ ] four factors when deciding whether an error substantially influenced an appellant's sentence: '(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in

question; and (4) the quality of the evidence in question.'" *Edwards*, 82 M.J. at 247 (quoting *Barker*, 77 M.J. at 384 (additional citations omitted)). "[A]n error is more likely to have prejudiced an appellant if the information conveyed as a result of the error was not already obvious from what was presented at trial." *Id.* (citing *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007)).

"Whether an accused has waived [or forfeited] an issue is a question of law we review de novo." *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). Appellate courts generally review forfeited issues for plain error, but "a valid waiver leaves no error to . . . correct on appeal." *Id.* (citation omitted). However, the applicable version of Article 66, UCMJ, 10 U.S.C. § 866, empowers a Court of Criminal Appeals to decline to apply forfeiture or waiver in order to address a legal error at trial, if warranted. *See United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018) (citations omitted).

### 3. Analysis

Appellant asserts the military judge erred by failing to exclude and by considering the portions of EH's, IB's, SN's, and MJ's unsworn statements quoted above. We address each statement in turn below.

However, as an initial matter we note that trial defense counsel and, at one point, the military judge purported to apply Mil. R. Evid. 403 to their analyses of the challenged unsworn statements. Mil. R. Evid. 403 expressly applies to "evidence." Unsworn victim impact statements offered pursuant to R.C.M. 1001(c) are not "evidence," and Mil. R. Evid. 403 is inapplicable when determining whether such statements may be properly received by the court-martial. *See United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021); *United States v. Hamilton*, 77 M.J. 579, 586 (A.F. Ct. Crim. App. 2017) (en banc). Accordingly, the references to Mil. R. Evid. 403 were inapposite. However, it is evident Mil. R. Evid. 403 was not determinative to any of the rulings Appellant challenges on appeal, and to the extent the military judge erred by applying Mil. R. Evid. 403 at one point, we find no material prejudice to Appellant's substantial rights from the error. *See* 10 U.S.C. § 859(a).

#### a. EH

We find the military judge did not abuse his discretion by overruling the defense objection to EH's statement that his financial loss resulting from Appellant's offense was "in excess of 100 thousand dollars." EH was describing his assessment of the financial impact resulting from the false official statement that EH had been selected for OTS and would be joining the Air Force,

of which Appellant had been convicted in accordance with his plea. This "financial . . . impact on the crime victim directly relating to or arising from the offense" of which Appellant had been convicted was squarely within the scope of R.C.M. 1001(c). That EH offered an estimated minimum amount rather than a precise calculation was not disqualifying. Moreover, EH's itemization of the types of costs he endured as a result of Appellant's deception add significant context and substantiation to the estimate.

We also find the military judge did not abuse his discretion by overruling the objection to EH's statement regarding the loss of a romantic relationship. EH described this event as one of the psychological impacts directly arising from and relating to Appellant's offense. What is more, he did not simply assert it was a consequence; he explained how the uncertainty caused by Appellant's conduct affected the relationship. The military judge explained he understood EH was describing his "opinion as to a factor that caused his relationship to come to an end." A psychological impact may be directly related to an offense without the offense being the sole cause of the impact. Whether the military judge found this information persuasive or significant as a sentencing consideration is a separate question; but the military judge's explanation of his ruling and comment that he could give the statement "the appropriate weight," coupled with the presumption that military judges know and apply the law absent evidence to contrary, convince us the military judge received and understood EH's unsworn statement in the appropriate light. *See United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citation omitted) ("Military judges are presumed to know the law and to follow it absent clear evidence to the contrary.").

#### b. IB

We find the military judge did not abuse his discretion by overruling the defense objection to IB's comments about his and his wife's identities being stolen. In explaining his ruling, the military judge carefully distinguished an implication that Appellant had stolen their identities—which IB did not allege and the military judge had no evidence of—from the exacerbation of the "fear or wondering or concern" IB felt after the theft due to Appellant's misconduct. This psychological impact was derived from Appellant's offense as well as the identity theft itself, and in that sense was "directly related to or resulting from" the offense.

Assuming *arguendo* the military judge erred by admitting this portion of the statement, after considering the four factors set forth in *Edwards*, 82 M.J. at 247, we find no material prejudice to Appellant's substantial rights. Several considerations lead us to this conclusion. First, IB also briefly referred to the identity theft during his testimony as a sentencing witness, which the Defense did not object to at trial or challenge on appeal. In addition, the military judge

indicated he would consider the statement in a specific and limited way. Also, the challenged sentences are a very small fraction of IB's relatively lengthy impact statement that spanned over three single-spaced pages of text. Moreover, the stipulation of fact, the testimony of IB and his wife, and IB's unsworn statement describe more direct and dramatic negative consequences of Appellant's offense, including *inter alia* inducing IB to sell his house, move to Saint Louis and attempt to buy a new house there, turn down employment opportunities, and drive to Alabama with his wife and infant son in anticipation of attending OTS. IB's feelings about the identity theft, as interpreted by the military judge, pale in comparison. Furthermore, we note the military judge adjudged a 12-month sentence to confinement for Specification 2, Appellant's offense against IB, which was concurrent with all other sentences to confinement. The military judge also adjudged concurrent 12-month sentences for Specifications 1 and 3, the offenses against EH and JD respectively. As described in the stipulation of fact, witness testimony, and unsworn statements, Specifications 1, 2, and 3, involving EH, IB, and JD, had the most severe victim impact of the eight offenses of which Appellant was convicted. Even if the military judge had excluded IB's reference to the identify theft from IB's unsworn statement, we are confident the military judge would still have sentenced Appellant to confinement for 12 months for Specification 2, in addition to the other elements of the sentence.

We also find the military judge did not abuse his discretion by overruling the defense objection to IB's statements regarding his reluctance to seek counseling after Appellant's offense. The military judge made clear he understood IB was not blaming Appellant for the existence of any "stigma" from counseling. Instead, the military judge understood IB was explaining what ameliorative measures he chose to pursue or forego to cope with the impact of Appellant's misconduct IB had already described. In that sense, this part of the statement directly related to Appellant's offense and its impact.

### c. SN and MJ

We find Appellant waived his objections to the portions of SN's and MJ's unsworn statements that he challenges on appeal. In each case, trial defense counsel objected to other portions of the statements, and the military judge sustained those objections. But when the military judge asked whether there were any additional objections, trial defense counsel said "no." The United States Court of Appeals for the Armed Forces has held that "under the ordinary rules of waiver, [an a]ppellant's affirmative statements that he had no objection to [the] admission [of evidence] also operate to extinguish his right to complain about [its] admission on appeal." *Ahern*, 76 M.J. at 198 (citations omitted). Similarly, we conclude trial defense counsel's assertion that the Defense had no further objections to these statements amounted to waiver.

Cognizant of our authority to pierce waiver in order to correct a legal error, we find no cause to do so in this case. Military judges are presumed to know and apply the law, absent evidence to the contrary. *Erickson*, 65 M.J. at 225. To the extent either statement challenged on appeal might be interpreted as an improper recommendation for a specific sentence, we presume the military judge did not consider them so.

## B. Sentence Severity

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although the Courts of Criminal Appeals are empowered to "do justice[ ] with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

### 2. Analysis

Appellant contends his sentence is inappropriately severe. He asserts that at the time of the offenses he was experiencing a mental health crisis and severe alcohol abuse disorder which ultimately required in-patient treatment and lengthy rehabilitation. Appellant contends he "did not appear to be acting maliciously" when he committed these offenses, nor did he personally profit from them. He highlights his excellent service record prior to 2019, and that after he received treatment he cooperated with law enforcement, paid some financial compensation to a victim, pleaded guilty to the offenses, and showed great contrition for his actions. Appellant asks this court to set aside his bad-conduct discharge.

Based on his guilty pleas alone, Appellant might have been sentenced to a dishonorable discharge, confinement for 40 years, total forfeitures, and reduction to the grade of E-1. Appellant made a plea agreement with the convening authority that capped his term of confinement for each of the eight specifications of false official statement to 365 days, with each term to run concurrently. Appellant received concurrent sentences to confinement of between 3 and 12 months, in addition to a bad-conduct discharge, reduction to the grade of E-1, and a reprimand.

We do not find Appellant's sentence is inappropriately severe. After Appellant had already been repeatedly disciplined for lying to applicants and other misconduct, and was instructed not to have contact with applicants, he engaged in an extensive pattern of making false statements to health care professionals who wanted to apply to the Air Force. Most of the victims submitted unsworn statements and several testified to explain how Appellant's offenses had negatively affected their lives and their perception of the Air Force. Certain victims experienced significant financial loss, disruption to their lives and careers, and particularized feelings of anxiety and betrayal due to Appellant's crimes. The motivation for Appellant's actions may be difficult to understand, but he was certainly aware his victims were relying on, and impacted by, his false official statements. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude Appellant's sentence is not inappropriately severe.

## C. Legibility of the Record of Trial

### 1. Law

A complete record of the proceedings, including all exhibits, must be prepared for any general court-martial that results in a punitive discharge or more than 12 months of confinement. Article 54(c)(1), UCMJ, 10 U.S.C. § 854(c)(1); R.C.M. 1103(b)(2). Whether a record of trial is complete is a question of law we review de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014) (citation omitted).

"[A] substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the [G]overnment must rebut." *United States v. Harrow*, 62 M.J. 649, 654 (A.F. Ct. Crim. App. 2006) (citation omitted), *aff'd*, 65 M.J. 190 (C.A.A.F. 2007). However, "[i]nsubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000). We approach the question of what constitutes a substantial omission on a case-by-case basis. *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999) (citation omitted). "In assessing either whether a record is complete . . . the threshold question is 'whether the omitted material was "substantial," either qualitatively or quantitatively.'" *Davenport*, 73 M.J. at 377 (quoting *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982)) (additional citation omitted).

### 2. Analysis

Without objection, the military judge admitted Prosecution Exhibit 3, a 34-page document composed of Appellant's performance reports and their attachments. Appellant contends that pages five and six of the exhibit, representing

Appellant's referral performance report from 1 December 2018 through 30 November 2019, are "illegible." He further contends page eight, the indorsement to the referral memorandum, is "blurry and does not legibly show whether [Appellant] elected to respond" to negative information in the performance report.[6] Accordingly, Appellant reasons the record contains a substantial omission and requests this court either reassess the sentence to disapprove the bad-conduct discharge, or remand the record to correct the omission.

We are not persuaded any correction is required. The essential flaw in Appellant's reasoning is that we have no indication anything is missing from the original record of trial. It appears the Prosecution Exhibit 3 contained in the record is the same Prosecution Exhibit 3 the military judge received and reviewed during sentencing proceedings. Although we agree with Appellant that page 5 in particular is blurry and partially illegible, so far as the record discloses, this is simply the state of the evidence that was before the court-martial. Accordingly, we find no substantial omission and no relief warranted.

### D. Post-Trial Errors

#### 1. Deferment Requests

The convening authority's decision on action memorandum indicates Appellant requested deferment of his confinement, the reduction in grade, and the automatic forfeitures of pay and allowances. The convening authority expressly denied the deferments of the reduction in grade and automatic forfeitures, citing "the nature of the offenses of which [Appellant] was convicted and the effect of deferment on good order and discipline in the command." However, the convening authority did not grant or deny in writing Appellant's request to defer his confinement, nor state the reasons for doing so. The record discloses no indication the Defense objected or moved for correction of the convening authority's failure to address the request to defer confinement.

We review a convening authority's denial of a deferment request for an abuse of discretion. *United States v. Sloan*, 35 M.J. 4, 6 (C.M.A. 1992), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018); R.C.M. 1103(d)(2). "When a convening authority acts on an [appellant]'s request for deferment of all or part of an adjudged sentence, the action must be in writing (with a copy provided to the [appellant]) and must include the reasons upon which the action is based." *Id.* at 7 (footnote omitted); *see also* R.C.M. 1103 (providing procedures for deferment). "A motion to correct an

---

[6] Although we agree with Appellant that page eight is not clearly marked, by our own observation there is some indication the indorsement reflects Appellant "did not" submit matters in response to the performance report. This conclusion is consistent with the absence of such a response from Prosecution Exhibit 3.

error in the action of the convening authority shall be filed within five days after the party receives the convening authority's action." R.C.M. 1104(b)(2)(B).

Because Appellant did not object or move to correct an error in the convening authority's decision on action, we review the convening authority's decision on action for plain error. *See Ahern*, 76 M.J. at 197 (citations omitted) (noting appellate courts review forfeited issues for plain error). Under the longstanding precedent of *Sloan*, the convening authority's failure to act on the confinement deferment request in writing and state the reasons was an error. *See* 35 M.J. at 7. For purposes of our analysis, we assume without holding the error was clear or obvious. However, under the circumstances of this case, we find no material prejudice to Appellant. Appellant bore "the burden of showing that the interests of [himself] and the community in deferral outweigh[ed] the community's interests in imposition of the punishment on its effective date." R.C.M. 1103(d)(2). However, Appellant's clemency request only impliedly requested deferment of his confinement and offered no specific justification for it. Moreover, Appellant not only forfeited the issue at the time, but he has not alleged on appeal prejudicial error by the convening authority. Furthermore, the convening authority denied Appellant's other deferment requests with a consistent rationale, and also denied Appellant's request to waive automatic forfeitures for the benefit of his dependents pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b. In the absence of any indication the convening authority entertained an improper rationale for denying deferment of confinement, we find Appellant's material rights were not substantially prejudiced by the convening authority's failure to deny the deferment in writing and state the reasons for the denial.

### 2. Statement of Trial Results and Entry of Judgment

The Specification of Charge I alleged Appellant had on divers occasions willfully disobeyed a lawful command from his squadron commander in violation of Article 90, UCMJ, 10 U.S.C. § 890. The Statement of Trial Results (STR), prepared after the court-martial pursuant to R.C.M. 1101, correctly reflected Appellant had pleaded "not guilty" to this Specification, and that the Specification was "[w]ithdrawn and dismissed with prejudice in accordance with the plea agreement." The STR also correctly indicated Appellant had pleaded "not guilty" to Charge I, but it incorrectly stated he had been found "not guilty" of Charge I when in fact it also had been dismissed with prejudice. The entry of judgment prepared pursuant to R.C.M. 1111 repeats this error, stating Appellant was found "not guilty" of Charge I rather than it was dismissed with prejudice in accordance with the plea agreement. We find it appropriate to modify the entry of judgment to ensure it correctly reflects the

disposition of the charges and specifications in this case, and we take corrective action in our decretal paragraph. *See* R.C.M. 1111(c)(2).

### III. CONCLUSION

The entry of judgment is modified as follows: for Charge I, the finding is modified by excepting "NG" and substituting therefor "Withdrawn and dismissed with prejudice in accordance with the plea agreement." The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court